*W. A. Peele* and *M. Wilson*, for appellant.

*N. S. Johnson* and *W. S. Ballenger*, for appellee.

---

BANSEMER and Others *v.* THE TOLEDO AND WABASH RAILWAY COMPANY.

RAILROADS.—COMMON CARRIERS.—Railroad companies are common carriers, and as such are liable by the rules of the common law for losses occurring from any accident which may befall the goods during the transit, except such as result from the act of God or the public enemy.

Bansemer and Others *v.* The Toledo and Wabash Railway Company.

SAME.—As a general rule common carriers by wagons are required to deliver the goods to the consignee at his house or place of business, and their liability as such continues until such delivery, but this rule does not apply to common carriers by vessels on the seas, lakes or navigable rivers, or by railroads.

SAME.—The warehouse or depot at the town or station to which goods are shipped by railroad is the proper place of delivery to the consignee. When they are discharged from the cars and, in the absence of the consignee, are safely stored in the company's warehouse, the liability of the railroad company as a common carrier is terminated, without notice to the consignee of the arrival of the goods.

SAME.—WAREHOUSEMAN.—When goods are thus stored the character of a warehouseman attaches to the company, and as such it is required to keep the goods in store for the consignee for a reasonable time, without additional reward. But during such time the company is only liable as a warehouseman.

APPEAL from the *Warren* Circuit Court.

ELLIOTT, J.—The appellants, who were the plaintiffs below, sued the railway company to recover the value of four cases of boots and shoes, received by the defendants at the company's depot at *Lafayette,* to be carried to *Marshfield,* in *Warren* county, and there delivered to *Isaac N. Julian,* one of the plaintiffs, to whom they were consigned.

The complaint alleges that the freight train on which the goods were shipped was due at *Marshfield* at 6 o'clock P. M. of the 29th of *November,* 1864, at which time the consignee, who resided in *Marshfield,* and near the defendant's station and depot at that place, was at said depot ready to receive said goods, but that, for some cause, said freight train did not arrive at that place until after 9 o'clock of the same evening; that upon the arrival of the train the goods were unloaded from the car, and deposited in the warehouse and depot of the defendant at *Marshfield;* that during the same night, and before any notice of their arrival had been given to the consignee, said warehouse and goods were destroyed by fire. The complaint seeks to charge the defendant only as a common carrier, and not as a warehouse keeper. The court sustained a demurrer to the complaint because it did not state facts sufficient to constitute a cause of action.

The plaintiffs excepted, and the court gave final judgment against them for costs.

The only question presented in the case is, is the defendant liable as a common carrier for the value of the goods thus destroyed before notice to the consignee of their arrival?

Railroad companies are common carriers, and as such are liable by the rules of the common law for losses occurring from any accident which may befall the goods during the transit from any cause, except such as arise from the act of God or the public enemy. In the present case it is evident that the loss did not result from any cause within the exception. Nor is it shown by the complaint that it was from any default or negligence of the company, its agents or servants.

If, at the time of the loss, the relation of the defendant in respect to the goods was that of a common carrier, then the defendant is liable in this suit, because, as a common carrier, the company is bound as an insurer to take the risk, and no question of default or negligence can arise in the case. Though the loss may have resulted from a cause for which neither the defendant nor its servants were in any degree chargeable, still, as a common carrier, the company is liable and must bear the loss. This stringent rule of the common law is founded in necessity, arising from the nature of the employment, as a protection against frauds of which it would seldom be possible to adduce proper legal evidence. But, on the other hand, if, when the goods arrived at *Marshfield*, and were unloaded from the cars and deposited in the defendant's warehouse for delivery to the consignee, the transit was at an end, and the defendant's liability as a common carrier terminated, and the company continued thereafter to have possession of the goods, not as a common carrier, but in the capacity of a warehouseman, and was only responsible for the care and diligence attached by law to that relation, which does not extend to a loss by fire not

caused by the default of the warehouseman or that of his servants, the company is not liable.

As a general rule, common carriers by wagons are required to deliver the goods to the consignee at his house or place of business, and their liability as such continues until such delivery is made; but this rule is not applicable to common carriers by vessels on the seas, lakes or navigable rivers, nor to common carriers by railroads. Vessels are necessarily confined to the water, and discharge their cargoes on the wharves at public landings, and in such case general custom, arising from necessity and the convenience of commerce, sanctions such discharge as the proper place of delivery. If the consignee is not present to receive the goods, the carrier may discharge himself from further liability by notifying the consignee of their arrival, and allowing reasonable time for him to prepare to take them away, or, if the consignee cannot be found, by having them stored in a proper warehouse for him. Cars on a railroad are necessarily confined to the track of the road, and, unless the consignee should have a warehouse immediately by the track, an actual delivery cannot be made without a change in the means of transit. From the very nature of this mode of carriage, the convenience of the company, if not an absolute necessity, demands that depots or warehouses should be erected at places where goods are received and discharged, in which they may be safely stored, and that there should also be agents at such places for the transaction of the necessary business. These warehouses constitute the proper places of delivery. The consignee must be presumed to know that the goods are there discharged, and that it is his duty to receive them at that place. When the goods have reached their destination the transit is at an end, and we think that when they are discharged from the cars, and, in the absence of the consignee or his agent to receive them, are safely stored in the warehouse, the liability of the company as a common carrier is then terminated, without notice to the consignee of their arrival. When the goods are thus safely

stored, the character of a warehouseman attaches to the company, and as such it is required to keep the goods in store for the consignee for a reasonable time for him to receive and take them away, without additional reward. But, during such time, the railroad company is only liable as a warehouseman, for the want of that degree of care and diligence incident to that relation.

This is but a reasonable and just rule as applicable to this particular mode of carriage, and to the relation established thereby between the railroad company and the shipper, and the manner in which the business is necessarily conducted. It is also supported by authority. In *The Norway Plains Co.* v. *The Boston and Maine Railroad Co.*, 1 Gray, 263, the consignee had notice of the arrival of the goods, but the question is very fully and ably discussed by Chief Justice SHAW. It is there said: "The nature of the transportation, though on land, is much more like that by sea, in this respect, that, from the very nature of the case the merchandise can only be transported along one line and delivered at its termination, or at some fixed place by its side, at some intermediate point. The rule in regard to ships is very exactly stated in the opinion of BULLER, J., in *Hyde* v. *The Trent and Mersey Navigation Co.*, 5 T. R., 397, thus: 'A ship trading from one port to another has not the means of carrying the goods on land; and, according to the established course of trade, a delivery on the usual wharf is such a delivery as will discharge the carrier.' Another peculiarity of transportation by railroad is, that the car cannot leave the track or line of rails on which it moves." *    *    *    *    *    *
"From this necessary condition of the business, and from the practice of these transportation companies to have platforms on which to place the goods from the cars, in the first instance, and warehouse accommodation by which they may be securely stored, the goods of each consignment by themselves, in accessible places, ready to be delivered, the court are of opinion that the duty assumed by the railroad corporation is—and this being known to the owners of the

goods forwarded, must, in the absence of proof to the contrary, be presumed to be assented to by them—that they will carry the goods safely to the place of destination and there discharge them on the platform, and then and there deliver them to the consignee or person entitled to receive them, if he is there ready to take them forthwith, or, if the consignee is not there ready to take them, then to place them securely and to keep them safely for a reasonable time, ready to be delivered when called for. This, it appears to us, is the spirit and legal effect of the duty of the carrier and of the contract between the parties when not altered or modified by special agreement." * * * * "From this view of the duty and implied contract of carriers by railroad we think there result two distinct liabilities: first, that of common carriers, and afterward that of keepers for hire, or warehouse keepers, the obligations of each of which are regulated by law." * * * "This view of the law applicable to railroads as common carriers of merchandise affords a plain, precise and practical rule of duty, of easy application, well adapted to the security of all persons interested. It determines that they are responsible as common carriers until the goods are removed from the cars and placed on the platform; that if, on account of their arrival in the night, or at any other time when, by the usage and course of business, the doors of the merchandise depot or warehouse are closed, or for any other cause they cannot then be delivered, or if, for any reason, the consignee is not there ready to receive them, it is the duty of the company to store and preserve them safely under the charge of competent and careful servants ready to be delivered, and actually to deliver them when called for by the party authorized and entitled to receive them; and for the performance of these duties, after the goods are delivered from the cars, the company is liable as a warehouseman or a keeper of goods for hire."

To the same effect are the cases of *Thomas* v. *The Boston and Providence Railroad Co.*, 10 Metcalf, 472, and *Denny* v.

*The New York Central Railroad Co.*, 13 Gray, 481. In *Richards* v. *The Michigan Southern, &c. Railroad Co.*, 20 Ill., 404, it was held that to terminate the liability as a common carrier, it is not necessary that the railroad company should give notice of the arrival of the goods to the owner or consignee, and that so soon as the goods arrive at their destination, or at the terminus of the road, and are unloaded and placed safely and securely in the railroad company's warehouse, the responsibility of the common carrier ceases, and that of the warehouseman attaches. The same ruling was made in *Porter* v. *The Chicago and Rock Island R. R. Co.*, *id.*, 407. In the *New Albany and Salem R. R. Co.* v. *Campbell*, 12 Ind., 55, the question was discussed, but not decided, for the reason that the consignee had notice of the arrival of the goods, and had paid the freight on them before they were destroyed. A contrary doctrine was held in the case of *Moses* v. *The Boston and Maine R. R. Co.*, 32 N. H. R., 523, and we are referred by the appellant to numerous other cases, but on an examination of them we find them all against common carriers by water. We think there was no error in sustaining the demurrer to the complaint.

The judgment is affirmed, with costs.

*J. H. Brown* and *A. A. Price*, for appellants.