McEWEN and Another *v.* THE JEFFERSONVILLE, MADISON, AND INDIANAPOLIS RAILROAD COMPANY.

COMMON CARRIER.—*Bill of Lading.*— *Conditions as to Delivery.*—A. delivered to a railroad company at a station on its road a quantity of flour owned by him, which was there placed on the cars of said company, to be shipped to

B. at another station on said road, in pursuance of a contract between A. and B. for the sale of said flour by the former to the latter, to be so delivered on cars at said former station, and to be paid for on receipt of the bills of lading. At the time of said delivery, B. was insolvent, and A received from the station agent of said company, authorized to receive and forward freights and furnished with blank bills of lading, at the station where the flour was so delivered, a bill of lading containing, besides the usual clauses, a provision, inserted at the request of A., that said flour should be delivered to B. upon the presentation of a duplicate of said bill of lading, and received also a second bill of lading in usual form, marked "duplicate" across the face thereof, in which the clause in relation to presentation of duplicate was omitted by mistake of the agent. A. made his draft on B. for the purchase-money of the flour, and attached said duplicate thereto, and negotiated said draft to C., who in good faith paid value therefor, knowing the form, character, and contents of said original bill of lading, which was then indorsed and delivered by A. to C. as collateral security for the payment of said draft; and C. deposited said draft, with said duplicate attached, at the bank at which it was made payable, and the cashier of said bank presented the same to B. before the delivery of the flour to him, who failed and refused to pay said draft or any part of it, but accepted it by endorsement across the face thereof; and, three days of grace having been granted, said draft was protested for non-payment, and the next day C. produced said original bill of lading and said duplicate at the office of said railroad company, at the station to which said flour was to be shipped as aforesaid, and demanded said flour theron; but said company failed and refused to deliver the flour, having delivered it to B., who was insolvent, and so continued to be, and who had shipped the flour out of the State.

*Held,* that the railroad company was liable to C. for the loss occasioned him by the delivery of the flour to B.

APPEAL from the Bartholomew Common Pleas.

This was an action by McEwen and Jones, bankers of the city of Columbus, in Bartholomew county, against The Jeffersonville, Madison, and Indianapolis Railroad Company. The complaint alleges, that on the 20th·day of August, 1867, H. W. Comstock & Co., of the city of Indianapolis, entered into a contract with B. F. Jones & Co. for the purchase of eight hundred barrels of flour, known as B. F. Jones & Co's. XXXX, at eleven dollars per barrel; the flour to be delivered on cars at Columbus, in Bartholomew county, Indiana, and to be paid for on receipt of the bills of lading; that under and pursuant to said contract and

agreement between said parties, said B. F. Jones & Co. delivered to defendant, who is a common carrier for hire, and whose line and route extends and runs from Jeffersonville in said State, *via* Columbus, to the city of Indianapolis, two hundred barrels of their said flour, at the said city of Columbus, which was placed on the cars of the defendant to be carried and shipped for said B. F. Jones & Co., the shippers and owners thereof, to said city of Indianapolis; that said H. W. Comstock & Co. had no interest in, or right to, said flour, until the purchase-money therefor was paid; that at the time of placing said flour on defendant's cars, to be shipped as aforesaid, said firm of H. W. Comstock & Co. was wholly and notoriously insolvent, and said B. F. Jones & Co., as such owners and shippers of said flour, to retain and hold the custody and control of said flour until the purchase-money therefor should be fully paid, at the time they delivered said flour to defendant, as aforesaid, requested the station agent of said defendant, at said city of Columbus, to make and execute a bill of lading therefor, containing, among the usual clauses, that the said flour should be delivered on presentation of duplicate; and on the delivery of said flour to defendant, as aforesaid, its said agent, under and in pursuance of the request of said B. F. Jones & Co., as aforesaid, with intention to secure the control and possession of said flour in said B. F. Jones & Co., as aforesaid, until the purchase-money for said flour should be paid, made and delivered a bill of lading therefor, to said B. F. Jones & Co., as the owners and shippers thereof, having the control and custody of the same, as aforesaid, wherein defendant agreed to deliver the said flour, without unnecessary delay, in like good order, to H. W. Comstock & Co., at Indianapolis, in said State, on payment of freight as per tariff of said company, and presentation of duplicate thereof, which bill of lading is as follows:

"COLUMBUS, August 24th, 1867.

"Received of B. F. Jones & Co., in apparent good order, except as below specified, to be transported on the J. M. and

I. Railroad, the under-named articles, marked as per margin, which we agree to deliver, without unnecessary delay, in like good order, to H. W. Comstock & Co., at the regular station at Indianapolis, on payment of freight as per tariff of said company, and presentation of duplicate hereof.

| MARKS. | ARTICLES. | WEIGHT. |
| --- | --- | --- |
| B. F. Jones & Co. ......... | 200 barrels of flour. | ........................................ |
| ................................... | On Cars | ........................................ |
| City Mills.................... | No. 3,017–672. | ........................................ |

J. R. WOODFILL."

And said defendant, by its said agent, made and delivered to said B. F. Jones & Co. its second bill of lading, which its said officer marked in writing across the face of the same "duplicate," but which, in fact, was not a duplicate, inasmuch as the clause "and presentation of duplicate hereof" is left out by mistake of said agent, which will be seen by reference to said original bill of lading and said second bill of lading, marked duplicate, a copy of which is filed marked "B," said defendant intending by said clause, "and presentation of duplicate hereof," in said original bill of lading, to require and bind said defendant to hold said flour until said Comstock & Co. or other person should lawfully and properly present said duplicate bill of lading therefor, and not otherwise deliver the said flour to said Comstock & Co., or any other person; and on said 24th day of August, 1867, before the delivery of said flour at said city of Indianapolis, said B. F. Jones & Co. made and drew their draft on said H. W. Comstock & Co., of Indianapolis, for the sum of two thousand two hundred dollars, the amount of said flour consigned as aforesaid, and on account thereof, payable at Indiana Banking Company's Bank, at said city of Indianapolis, and immediately produced their said draft, with said intended duplicate bill of lading for said flour attached thereto, at the banking house of plaintiffs, who were doing a banking business, as aforesaid, for the purpose of negotiating the same, who then and there, in good faith, discounted the same and paid value therefor to said B. F. Jones & Co., on the faith of said bill of lading, the plaintiffs

knowing the form, character, and contents of said original bill of lading, which was then and there, as part of said transaction, endorsed and delivered by said B. F. Jones & Co. to plaintiffs, as collateral security for the payment thereof, and on the 24th day of August, 1867, said draft, with said duplicate bill of lading attached, was placed at said Indiana Banking Company's bank, at the city of Indianapolis, for collection, who, by their agent, W. W. Woolen, cashier, presented said draft, with said duplicate attached, on same day, to said H. W. Comstock & Co., who, on said 24th day of August, 1867, accepted it by endorsement across the face thereof, but failed and refused to pay the same, or any part thereof; and the same was duly protested for non-payment on the 27th of August, 1867.

That said H. W. Comstock & Co. were, at the time of said shipment, wholly insolvent, and have been continually since, and are now, wholly unable to pay said draft, or any portion thereof, and the same is wholly unpaid. Plaintiffs aver that in a reasonable time, to wit, on the 28th day of August, 1867, plaintiffs produced their said original and duplicate bill of lading for said flour, at the office of defendant, at the said city of Indianapolis, and demanded said flour on the same, but defendant failed and refused to deliver the same to plaintiff, or any part thereof; that defendant prior thereto, to wit, on the 26th of August, 1867, surrendered and delivered all said flour to said H. W. Comstock & Co., without presentation of said duplicate or original bill of lading, or other authority, and in violation of said bill of lading, who on the same day forwarded the same beyond the limits of the State of Indiana.

That said Comstock & Co. did not produce to defendant the original or duplicate bill of lading, or other authority to obtain said flour, and never had possession thereof; but without the production thereof, said defendant delivered and surrendered said flour to said Comstock & Co., without any authority whatever; that said Comstock & Co., were not the owners of the flour, or entitled to the possession there-

of; that it was of the value of three thousand two hundred dollars. Judgment demanded for four thousand dollars with other proper relief.

A demurrer to the complaint was filed and at first overruled, and an answer filed, but subsequently, upon a demurrer being filed to the third paragraph of the answer, the court overruled it to the answer and sustained it to the complaint.

ELLIOTT, J.—The contract of shipment, which is the basis of the complaint, is contained in the bill of lading, by which the appellee acknowledged the receipt of the flour from Jones & Co. and agreed to deliver it to Comstock & Co., at the regular station at Indianapolis, on payment of freight "*and presentation of duplicate hereof.*" The latter clause, which we have italicised, was inserted in the bill of lading by the appellee's agent, at the instance of Jones & Co. The reason for which was, as alleged in the complaint, that Jones & Co. had previously contracted the flour to Comstock & Co., to be delivered on cars on the appellee's railroad, and to be paid for on the receipt of the bill of lading. Comstock & Co. had in the meantime become insolvent, and Jones & Co. did not intend that the flour should pass to their possession until it was paid for. This they intended to guard by the insertion of a clause in the bill of lading, making it a condition to the delivery of the flour that Comstock & Co. should first present to the appellee the duplicate bill of lading. Jones & Co. did not forward the duplicate to Comstock & Co., but transferred it by indorsement, with a draft drawn on the latter for the price of the flour, which they negotiated with the appellants, by whom it, with the bill of lading attached, was forwarded to Indianapolis for collection. Comstock & Co. did not pay the draft on presentation, and consequently the bill of lading was not delivered to them; and, therefore, they could not present it to the appellee; but the latter delivered the flour without its presentation.

Comstock & Co. were the consignees of the flour, and, in the absence of any condition being annexed to the delivery, would have been entitled to its possession on its arrival at Indianapolis, by paying the freight. The question, therefore, as to the sufficiency of the complaint depends upon the proper meaning and legal effect of the clause of the bill of lading, "and presentation of duplicate hereof."

It is contended by the appellee's counsel that this clause in the bill of lading must be regarded as having been inserted for the benefit of the carrier, as a means of identifying the consignees; that the railroad company was responsible for the delivery of the flour to Comstock & Co., the consignees; and that in delivering it to them without the presentation of the duplicate bill of lading, the only risk incurred was that of the proper identity of the persons named as consignees. No direct authority is cited in support of this proposition; but it is claimed that it stands upon the same footing as the other provision in the bill of lading, "upon payment of freight," and it is insisted that it is settled by the authorities that this latter provision in bills of lading is always regarded as having been inserted for the benefit of the carrier, which he may disregard in the delivery of the goods to the consignee and look to the consignor for the freight. But this proposition is too broadly stated, and not sustained by the cases cited. In *Collins & Timberlake* v. *The Union Transportation Co.*, 10 Watts, 384, the goods were shipped by E. & D. Gratz, commission and forwarding merchants, for Collins & Timberlake, who were merchants in Lexington, Kentucky, and the owners of the goods, which were consigned to Hutchinson & Leslie, a commission and forwarding house in Pittsburgh, and to be delivered to them "upon the payment of freights." The goods were carried by The Union Transportation Company and delivered to Hutchinson & Leslie without the payment of the freight, who forwarded them to Collins & Timberlake, and they paid the freight to Hutchinson & Leslie. The latter became insolvent. The Union Trans-

portation Company then sued Collins & Timberlake for the freight, and it was held that they were liable. It is said in the opinion of the court, "that the stipulation in a bill of lading, for delivery on payment of freight, is introduced for the benefit of the consignor, or the party for whom the consignee is agent," and that "if the agent should be faithless, the loss should fall on those who trusted him, and they ought to bear it."

*Barker* v. *Havens,* 17 Johns. 234, is also cited. In that case the owner of goods shipped them on the plaintiff's vessel, to be carried from New York to Liverpool, to be delivered to C., the consignee, he paying freight, &c. The master delivered the goods to the consignee without receiving the freights, which the consignee subsequently refused to pay. The suit was brought against the consignor, the owner of the goods, and he was held liable for the freight. But it was said by SPENCER, C. J., who delivered the opinion of the court, that he should be clearly of opinion, "that if it appeared that the goods were not owned by the consignor, and were not shipped on his account, and for his benefit, the carrier would not be entitled to call on the consignor for freight." This, upon principle, would seem to be the proper rule in such cases. If the owner consigns the goods, for his own benefit, to his agent, and the latter refuses to pay the freight, though the carrier is not bound to deliver the goods to him until the freight is paid, still the owner of the goods should be liable. But if the consignee is the owner of the goods, and they are shipped for his benefit, it is his duty to pay the freight, and if it is so stipulated in the bill of lading, the carrier must look to him alone for the freight.

*Shepard* v. *DeBernales,* 13 East, 565, is cited in both the foregoing cases as a leading case on this subject, and accords with the opinion expressed above.

But the stipulation that the goods were to be delivered to Comstock & Co. upon the presentation of the duplicate bill of lading, does not rest on the same foundation as that for the payment of freight. It is true that an unconditional

376     SUPREME COURT OF INDIANA.

McEwen and Another *v.* The Jeffersonville, Madison, and Ind'p'lis R. R. Co.

consignment of goods to a consignee by name is *prima facie* evidence that he is the owner and entitled to the possession of them, but it is not conclusive, and in many cases the consignee is but the agent of the consignor and receives the goods for his benefit. It is the right of the shipper, or consignor, in naming a consignee, to subject the delivery of the goods to him to any condition deemed proper by the consignor; and if, upon the arrival of the goods at the place of destination, the consignee does not comply with the condition, the carrier may discharge his liability as such by storing the goods in a proper warehouse, subject to the order of the shipper. In such a case the carrier is the agent of the shipper, and his primary duty is "to observe the instructions of his principal; and when he disregards them, he voluntarily assumes a responsibility by which he must content himself to abide." *Johnson* v. *The N. Y. Central R. R. Co.*, 33 N. Y. 610.

In this case, the stipulation in the bill of lading that the flour should be delivered to Comstock & Co. upon the presentation by them of the duplicate bill of lading, was inserted at the instance of Jones & Co. for their benefit and protection. It constituted a condition to the delivery of the flour to Comstock & Co., that they should first present the duplicate bill of lading to the appellee, and without which the latter was not authorized to deliver the flour to them. The duplicate bill of lading was delivered to Jones & Co. by the agent of the appellee; it could not be in the possession of Comstock & Co. until it was delivered or transmitted to them by or through Jones & Co.; and until it was received by them they were not authorized to receive the flour. By the contract of sale, Comstock & Co. were to pay for the flour on presentation of the duplicate bill of lading; and as they had become insolvent, care was taken to have the bill of lading, with a draft for the price of the flour, presented to them before the arrival of the flour at Indianapolis. The draft was not paid, and the bill of lading was not, therefore, delivered to them; and if the appellee

had observed the condition annexed to the delivery of the flour, the appellants, as the assignees of Jones & Co., would have been protected from loss. The loss resulted from the wrongful delivery of the flour by the appellee, without requiring the production of the duplicate bill of lading. The delivery was in violation of the instruction of the consignor, and the appellee must suffer the consequences.

But it is contended that under the contract between Jones & Co. and Comstock & Co., as stated in the complaint, the right of property in the flour vested in Comstock & Co. as soon as it was placed on the appellee's cars at Columbus, and that they were, therefore, entitled to its possession on its arrival at Indianapolis. We do not think so. Had the bill of lading stipulated for the delivery of the flour, under the contract of sale, to Comstock & Co. unconditionally, on its arrival at Indianapolis, the right of property would undoubtedly have vested in them, subject only to the right of Jones & Co. or their assigns of stoppage *in transitu*, before delivery. But as between Jones & Co., the consignor, and the carrier, it was the privilege of the former to annex a condition to the shipment and delivery of the flour to Comstock & Co. by which the former would retain the control of the possession. It is conceded that if the shipment had been made subject to the order of Jones & Co., though intended to be applied to the contract with Comstock & Co., the latter could not have claimed possession without the order of Jones & Co.; and we think that precisely the same result was effected by the stipulation that Comstock & Co. should present the duplicate bill of lading before receiving the flour, and then withholding the bill of lading from them until the flour should be paid for. See Angell on Carriers, 424, § 511. The discount of the draft by the appellants and the assignment and delivery to them of the duplicate bill of lading by Jones & Co. amounted to a sale of the flour to the appellants, in trust, to be delivered to Comstock & Co. if they paid for it on presentation of the draft and duplicate bill of lading, or in case they refused,

then to sell the flour and pay the draft. *Allen* v. *Williams*, 12 Pick. 297; *The Bank of Rochester* v. *Jones*, 4 N. Y. 497.

It is claimed, however, that when Comstock & Co. accepted the draft, they were entitled to the possession of the flour. By the terms of the contract, as stated in the complaint, the draft, it being accompanied by the bill of lading, was payable on presentation, and Comstock & Co. were not entitled to three days of grace; and the error of the appellant's agent in allowing that time before protesting the draft for non-payment did not entitle Comstock & Co. to receive the flour without the duplicate bill of lading. The appellants were secure in their lien on the flour so long as they withheld from Comstock & Co. the duplicate bill of lading, if the appellee had not violated the stipulation requiring the production of the duplicate before the delivery of the flour.

The third paragraph of the answer was manifestly bad. It admits, in effect, that the agent who signed the bill of lading was the appellee's station agent at Columbus, where the flour was shipped, with authority to receive and forward freights, which necessarily included the power to make and sign bills of lading and receipts for freights shipped at that point. It was the right of the shipper to name the consignee and annex such conditions as he deemed proper to the delivery to him of the goods shipped; and the fact that the agent was furnished blank bills of lading which did not specify any condition to the delivery of goods shipped, could not limit the power of the agent in that respect.

Judgment reversed, with costs; and the case remanded, with directions to the circuit court to overrule the demurrer to the complaint and sustain it to the third paragraph of the answer.

*F. T. Hord*, for appellants.

*S. Stansifer, T. A. Hendricks, O. B. Hord*, and *A. W. Hendricks*, for appellee.