The Merchants Despatch and Transportation Company *v.* Merriam *et al.*

No. 12,668.

THE MERCHANTS DESPATCH AND TRANSPORTATION COMPANY *v.* MERRIAM ET AL.

COMMON CARRIER.—*Contract.*—*Care Required Concerning Goods.*—A stipulation in a bill of lading issued by a transportation company, that goods received for shipment at Boston are "to be forwarded to Louisville depot only," does not relieve the carrier from its duty to properly care for them after their arrival at the latter place.

SAME.—*Duty to Provide Place of Storage.*—Although the bill of lading is silent on the subject, it is the duty of a common carrier, which becomes a part of its contract, to provide a place where goods may be safely kept after they have been unloaded from the cars in which shipment is made.

SAME.—*Warehouseman.*—*Negligence.*—*Delivery to Wrong Person.*—*Conversion.*—After goods are unloaded and stored, the liability of the carrier becomes that of a warehouseman, whether the depot or place of storage belongs to it or to another; and if, through its negligence, the goods are delivered to a wrong person, it is liable to the owner upon its contract for damages as for a conversion.

From the Marion Superior Court.

*A. C. Harris* and *W. H. Calkins,* for appellant.
*R. Hill* and *J. W. Nichol,* for appellees.

ZOLLARS, J.—On the 23d day of March, 1880, appellant received from G. & C. Merriam, a firm doing business in Massachusetts, a case of books to be carried from Boston to Louisville, Ky.

The case was safely transported, and arrived at Louisville on the 29th day of that month.

In the bill of lading, executed by appellant, are these provisions: "Received of * * * the following package, * * * to be forwarded * * * to Louisville depot only." "All articles of freight on arrival at place of destination are at the risk and expense of the owner." Also the following: "In no case will damages be allowed for wrong delivery or loss caused by defective marking with initials, or where the marks or directions are made on paper or cards."

The consignees are given in the bill as G. & C. Merriam, Louisville, Ky.

It is alleged in the complaint, that by the terms of the agreement, of which the bill of lading filed with and a part of the complaint is the written evidence, appellant undertook and agreed to carry the books from Boston to Louisville, and there deliver them to appellees or their duly authorized agent, upon a surrender of the bill of lading; that appellant did not so deliver the books, but, in violation of the contract and the bill of lading, wrongfully converted them to its own use.

Upon some points in the case, there is a conflict in the evidence, but there is evidence tending to establish the following as the facts in the case :

After the arrival of the books at Louisville, they were placed in the freight depot of the Louisville, Cincinnati and Lexington Railroad Company, and remained there until the 6th day of the following April.

The bill of lading, with a draft on one Judson W. Turner for the value of the books attached, was forwarded by appellees to a bank in Indianapolis, where Turner lived. By paying the draft, Turner would have been entitled to the bill of lading and the books. Without payment of the draft, he was not entitled to either the bill of lading or the books. He never paid the draft, nor did he in any other way pay to appellees the amount of the draft or the value of the books.

Subsequent to the arrival of the books at Louisville, he sent his brother to that city with a letter in the shape of an order for the books, signed by himself as " agent," on the Louisville, Cincinnati and Lexington Railroad Company. Upon that letter the railroad company delivered the books to the brother, and he disposed of them as directed by Turner.

Somewhat, perhaps, of the nature of an express company, appellant is clearly a common carrier, and, as such, subject to the rules of law applicable to such carriers.

Whether or not, in the absence of a stipulation in the bill

of lading, such transportation companies are bound to deliver goods to the consignee in the manner express companies are, is a question we need not decide.

Whatever might otherwise be the rule, the stipulation in the bill of lading in this case, that the goods should be forwarded to the Louisville depot only, would be sufficient to relieve appellant from the duty of seeking, and making a personal delivery of the goods to the consignees at their residence or place of business, if they had any such at Louisville. In other words, under the stipulation of the bill, appellant was not bound to carry the goods beyond the Louisville depot.

Fairly interpreted, the bill of lading fixed no further limitation upon the duty and liability of appellant as a common carrier of the goods. It did not authorize it to unload the goods upon the platform at Louisville and pay no further attention to them.

It is the duty of such common carriers to provide a place where goods carried by them may be safely kept after they shall have been unloaded from the cars. This duty results from the nature and necessities of the business ; and, although the bill of lading may be silent upon the subject, there is an implied undertaking upon the part of the carrier, in a case like this, which becomes a part of the contract, that if the consignee shall not be present to receive the goods from the cars, or on the platform, it will store them in a safe place, and exercise at least reasonable care to preserve them from loss, and to deliver them to the proper consignee.

When the goods are thus unloaded and stored, the extraordinary liability of the common carrier, as an insurer, ceases, and it becomes responsible from that time forward as a warehouseman.

That liability, as we have in effect said, results from and rests upon the contract of carriage. There is but one contract, and when the contract is reduced to writing, it is evidenced by the bill of lading.

If, therefore, after the goods are unloaded and stored, they are destroyed, or delivered to a wrong person, through the negligence of the carrier, it has violated its contract, and may be compelled to respond in damages in a suit upon that contract. In such a case, the action is based upon the contract. And if through the negligence of the carrier after the goods have been thus stored, they are delivered, not to the proper consignee, but to a wrong person, the carrier will be liable to the owner as for a conversion of the goods.

As fully supporting the foregoing propositions, we cite the following: *Bansemer* v. *Toledo, etc., R. W. Co.,* 25 Ind. 434; *Pittsburgh, etc., R. W. Co.* v. *Nash,* 43 Ind. 423; *Mc-Ewen* v. *Jeffersonville, etc., R. R. Co.,* 33 Ind. 368 (5 Am. R. 268); *Jeffersonville, etc., R. R. Co.* v. *Irvin,* 46 Ind. 180; *American Express Co.* v. *Hockett,* 30 Ind. 250; *Adams Express Co.* v. *Darnell,* 31 Ind. 20; *American Express Co.* v. *Stack,* 29 Ind. 27; *Baltimore, etc., R. R. Co.* v. *McWhinney,* 36 Ind. 436; *Green and Barren River Navigation Co.* v. *Marshall,* 48 Ind. 596; *Cincinnati, etc., R. R. Co.* v. *McCool,* 26 Ind. 140; *American Express Co.* v. *Fletcher,* 25 Ind. 492; *McCulloch* v. *McDonald,* 91 Ind. 240; *Indianapolis, etc., R. R. Co.* v. *Remmy,* 13 Ind. 518; *Bartlett* v. *Pittsburgh, etc., R. W. Co.,* 94 Ind. 281; *Hall* v. *Pennsylvania Co.,* 90 Ind. 459; *Lake Shore, etc., R. W. Co.* v. *Bennett,* 89 Ind. 457; Hutchinson Carriers, sections 126, 351, 354, 388.

It is not shown by the evidence in the case before us, except inferentially, that the freight depot of the Louisville, Cincinnati and Lexington Railroad Company was also the freight depot of appellant. Nor is it shown very definitely that appellant placed the books in that depot. They were placed there by some one, and by the persons in charge delivered to Turner's brother. If, in fact, that depot was also the depot of appellant, and it placed the books therein, it was bound to exercise the care of a warehouseman in the delivery of them. If, in fact, appellant had no freight depot, but adopted that of the railroad company for the storage of

the books, it was still bound to see to it that in the delivery of the books, such care was exercised as is required of a warehouseman.

Nor would it help appellant's case if it should be said that it neither had a freight depot nor stored the books, but left them on the platform at the depot. We are not enabled to say upon the evidence before us, that proper care was exercised in the delivery of the books.

Turner's brother was a stranger to those in charge of the depot where the books were stored. Judson W. Turner did not have the bill of lading, and there is evidence tending to show that neither he nor his brother had either a duplicate or a copy of it; nothing was presented to those in charge of the depot except an order or letter, signed by Judson W. Turner as "agent." It was not even stated therein that he was agent for appellees. In fact, he was not such agent, and had no authority, and could have no authority, to receive the books without having paid the draft attached to the bill in the possession of the bank.

The books were thus delivered to Turner's brother upon the letter alone, and without further inquiry as to his authority to receive them.

The evidence does not justify the delivery of the books to him, and hence that delivery did not relieve appellant from its obligations to deliver them to appellees. See again the cases above cited.

The judgment of the court below awarding damages to appellees is affirmed, with costs.

Filed May 10, 1887.