NEBRASKA MEAL MILLS *v.* ST. LOUIS SOUTHWESTERN RAILWAY
COMPANY.

Opinion delivered June 5, 1897.

CARRIER—DELIVERY TO CONSIGNEE.—A carrier will not be liable to a con-
signor for delivering goods to a consignee in accordance with the terms
of the bill of lading, without requiring the production of such bill of
lading, although the consignor had forwarded to a bank for collection a
draft for the purchase money on the consignee with the bill of lading
attached, which remained unpaid; the carrier having no notice of such
draft. (Page 171.)

BILL OF LADING—NECESSITY FOR SURRENDER.—Sand. & H. Dig., §510, pro-
viding that no property specified in a bill of lading shall be delivered by
the carrier except on surrender and cancellation of the bill of lading, does
not render a carrier liable for delivering goods to a consignee as directed
in the bill of lading without requiring a surrender thereof, if there has
been no transfer of such bill of lading. (Page 171.)

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge:

STATEMENT BY THE COURT.

The appellant corporation delivered to the Missouri Pacific
Railway Company a car load of meal for shipment to E. D.
Russell at Altheimer, Ark. The railway company thereupon
gave to said consignor a bill of lading, in which it was stipu-
lated that said meal was to be transported from Stella, Nebraska,
to Altheimer, Arkansas, and there delivered to the consignee,
E. D. Russell. The appellant then, without notice to the rail-
way company, drew a sight draft on said Russell for $182.30,
the price of the meal, and attached it to the bill of lading, and
had the same forwarded to a bank at Pine Bluff, Ark., for
collection. The bank presented the draft for payment, but
Russell was insolvent, and failed to pay. The St. Louis South-
western Railway Company, which had received the meal as con-
necting carrier, having no notice that a draft had been drawn
on Russell and sent for collection, or that Russell was insolvent,
or that the consignor desired to retain control of the meal

until the draft was paid, delivered the meal ·to him without requiring the production of the bill of lading.

The appellant brought this suit against the railway company to recover damages, alleging that the delivery under such circumstances was wrongful and resulted to its injury. The finding and judgment were in favor of the defendant.

*Bridges & Wooldridge*, for appellant.

The appellee made itself liable by delivering the goods without requiring the production of the bill of lading. 2 Am. & Eng. Enc. Law, p. 242; 44 N. Y. 136; 106 *id.* 579; 63 Ga. 746; Beach, Law of Railways, vol. 2, § 951; 111 Ind. 6; 33 *id.* 368, 375; 32 Fed. Rep. 51; 60 N. W. Rep. 583; 4 Am. St. Rep. 626; 123 U. S. 727; 72 N. Y. 615; 9 Am. St. Rep. 504; 44 *id.* 618; 115 Mass. 230; *ib.* 233; 33 S. W. Rep. 521; Sand. & H. Dig., §§ 509, 511, 512; 102 N. Y. 120; 42 Am. St. Rep. 76. It was error to refuse to permit plaintiffs to read to the jury questions and answers 12 and 23 of the deposition of J. W. Jameson. 87 Ill. 296; 25 Ohio, 360; 34 S. W. Rep. 858, 862; 50 Ark. 397.

*Sam H. West* and *J. M. & J. G. Taylor*, for appellee.

A compliance with the terms of the bill of lading is all that is required of the carrier. In this case there was a strict compliance. Porter, Bills of Lading, §§ 397, 426, etc.; Beach, Railways, § 951; 33 Ind. 368; 113 U. S. 227, 241; 123 *id.* 733, 734; Hutch. Car. (2 Ed.) § 134; *ib.* 130; 36 S. W. Rep. 184; 60 N.W. Rep. 585; Sand. & H. Dig., §§ 6255, 6256; 44 Ark. 306; 130 U. S. 424; L. R. 4 H. of L. Cases, 317; 133 Mass. 159.

*Dodge & Johnson*, for appellee.

The contract on the part of the carrier was to receive the meal, transport it safely, and *deliver* it to consignee. This was done, and there is no liability. Hutch. Car. § 130; 23 N. Y. 337; 1 Thomp. 477; 47 N. Y. 37; 69 N. W. Rep. 961, 964; 48 N. Y. 507; 69 *id.* 533; 106 *id.* 587; 17 How. (U. S.) 393, 394; 53 Ark. 200; 61 Am. & Eng. R. Cas. 169; 50 Ark. 23; 119 Pa. St. 24; Hutch. Car. § 129; 133 Mass. 154; 14 Wall. 98;

36 S. W. Rep. 398;   Benjamin, Sales, §§ 540, 590; 1 Cold. 271.

RIDDICK, J., (after stating the facts.)    The bill of lading under which the meal was forwarded by defendant railway company stipulated that it was to be transported to Altheimer, Arkansas, and there delivered to the consignee, E. D. Russell. It is admitted that the railway company performed its contract in strict accordance with its terms.    But it is said that the consignee, Russell, had not paid for the meal; that the consignor had drawn upon him for the price of the meal, and had forwarded the draft, with the bill of lading attached thereto, to a bank for collection, thus showing an intention that Russell should not have the meal without first paying for it.    The answer to this argument is that, if it be true that the consignor did not intend that the meal should be delivered until the payment of the purchase price, yet it is also true that the railway company had no notice of such intention.    The meal was billed "straight" to the consignee, and, as the railway company had no notice of the intention of the consignor to retain the ownership and control of the property, it was justified in presuming that the consignee was the owner thereof, and was discharged by a delivery to him at the place specified in the bill of lading. *Sweet* v. *Barney*, 23 N. Y. 235; *O'Dougherty* v. *Railroad Company*, 1 Thomp. & C. (N. Y.) 477; *Lawrence* v. *Minturn*, 17 How. (U. S.) 100; *McEwen* v. *Railroad Co.*, 33 Ind. 368; Hutchinson, Carriers, § 130; Elliott, Railroads, § 1426.

It is argued for appellant that the railway carrier had no right to deliver to the consignee except upon a production of the bill of lading.    To this argument we reply that the carrier must deliver in accordance with the bill of lading, and if it delivers without requiring the production of the bill of lading, it assumes the consequence of a wrong delivery.    But in this case the delivery was made strictly in accordance with the requirement of the bill of lading, which evidenced the contract made with plaintiff, and he therefore has no right to complain.

Counsel for appellant have cited *Furman* v. *Union Pacific Ry. Co.*, (106 N. Y. 579,) and *Merchants Despatch & Transportation Co.* v. *Merriam*, (111 Ind. 6,) as sustaining the contention that, under the circumstances here, the railway com-

pany was guilty of negligence in making the delivery, without requiring a production of the bill of lading. But a broad distinction between those cases and the one at bar is that in neither of those cases were the goods billed "straight," and in neither of them were the goods delivered to the person to whom the bill of lading stipulated the delivery should be made. In both of those cases it was said that the carrier was guilty of negligence in not requiring the production of the bill of lading before delivery of the goods, for the reason that such bill would have shown that the person to whom delivery was made was not the consignee. In each of those cases the carrier failed to deliver the goods in accordance with the terms of the bill of lading. The delivery was made to a person not named as consignee in the bill of lading, and the carrier was held liable for a wrong delivery. But those cases can be no authority for holding a carrier liable for a delivery made to the person named as consignee in the bill of lading, and in exact accordance with its terms.

It is further said that, apart from the common law, the railway company is liable under the provisions of our statute. Sand. & H. Dig. §§ 509, 510. These sections provide that warehouse receipts and bills of lading given for goods, wares, merchandise, cotton, grain, and other commodity shall be negotiable by written indorsement, and that "any and all persons to whom the same may be transferred shall be deemed and held to be the owner of such goods, wares, merchandise, cotton, grain, flour or other produce or commodity, so far as to give validity to any pledge, lien, or transfer given, made or created thereby, or on the faith thereof, and no property   *   *   *   specified in such bills of lading or receipts shall be delivered except on surrender and cancellation of such receipts and bills of lading; provided that all such receipts and bills of lading which shall have the words 'Not negotiable' plainly written or stamped on the face thereof shall be exempt from the provisions of this act." But we are of the opinion that this act does not affect the right of the carrier to deliver except in those cases where the bill of lading has been transferred. Bills of lading are frequently transferred as security for loans and advances, and the purpose of this statute was to protect those who make advances upon the faith of such transfers. The case of *Colgate* v. *The Penn-*

*sylvania Co.*, 102 N. Y. 120, cited by counsel for appellant, arose under a statute similar to our statute. But in that case the bill of lading had been transferred by the consignee named therein, and, as it was issued without the words "Not negotiable" upon it, the court said that the carrier was bound to know that it "may have passed into other hands and become the property of others than the consignee." The carrier was held liable because by an assignment of the bill of lading the title of the property had been transferred from the consignee to the plaintiff in that case. The case thus came squarely within the scope of the statue which, to protect purchasers and others advancing money upon bills of lading, required the carrier to deliver only upon surrender of such bills of lading. But in this case the bill of lading was not transferred, the rights of no third party are involved, and neither the statute nor the decision just referred to has any bearing upon the question to be determined. And so, without discussing them, we may say, of the other cases cited by counsel for appellant, they do not in our opinion sustain the contention that the railway company is liable under the facts of this case.

If, as counsel for appellant contends, the bill of lading represented the meal, and the ownership of the meal was in appellant so long as it held the bill of lading, still, as such owner, it unconditionally directed the carrier to deliver the meal to Russell. It would seem unreasonable to believe that the legislature intended to impose a liability upon the carrier in favor of the consignor for obeying and carrying out the directions of such consignor in regard to the delivery of the consigned property, for such intention would be contrary to common principles of reason and justice. To justify the court in arriving at such a conclusion, the language of the act to that effect should be so plain and direct that it would not be reasonable to give it a different meaning. The language of this act does not, in our opinion, justify any such conclusion. On the contrary, the purpose of it, as before stated, was to protect persons not parties to the bill of lading originally, but who for a valuable consideration acquired an interest in the property represented by it through the transfer of the bill of lading to them. There was certainly no occasion for an act of this kind to protect

the rights of the consignor, for he is a party to the contract of shipment, and can protect himself by stipulations therein. In this case the appellant could have protected itself against the failure of the consignee to pay for the meal by making the consignment to its own order, or, after the meal had been consigned to Russell, it might, upon discovery of his insolvency, have effected the same purpose by *stoppage in transitu* and notice to the railway company not to deliver until payment of the draft to which the bill of lading had been attached. But the appellant failed to do this, and the railway company in good faith delivered the meal in accordance with its contract and the directions of appellant, as shown by the bill of lading. Under such circumstances, it seems to us, notwithstanding the able argument of counsel for appellant, that this claim for damages has neither the letter of the law nor any principle of justice to sustain it.

Judgment affirmed.

BATTLE, J., dissents.