MISSOURI PACIFIC RAILROAD COMPANY *v.* TOLL.

Opinion delivered May 19, 1924.

CARRIERS—DISPOSITION OF FREIGHT.—Where a carload of freight was shipped to the consignor's order, and on its arrival the carrier's agent by telegram requested advice as to disposition, a reply that the car was for a designated person did not authorize its delivery to such person without production of the bill of lading; Crawford & Moses' Dig., § 909, requiring a carrier to notify the consignor of the consignee's refusal to receive freight, whereupon the consignor should direct disposition of the freight, having no application.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; affirmed.

*Thos. B. Pryor* and *Samp Jennings,* for appellant.

Where goods are billed "straight" to the consignee, and the railway company has no notice of the intention of the consignor to retain ownership, the carrier has a right to deliver the goods without the surrender of the bill of lading. See 64 Ark. 169; 79 Ark. 456; 229 Fed. 975; 279 Fed. 382. The proper way to give a carrier notice is by taking an "order" bill, in which event delivery could not be made without the surrender of the bill. 77 Ark. 482; 112 Ark. 110. The general rule holding the carrier liable for delivery to the wrong person does not apply where the delivery is due to the negligence of the

consignor.  4 R. C. L., § 298, p. 846.  If the carrier is misled by some act of the shipper or consignee as to the person to whom delivery should be made, the carrier will be excused.  6 Cyc. 473; 10 C. J. 255, § 368.  The telegram was certainly an authorization to deliver the goods to the person for whom they were intended.

*Emerson & Donham,* for appellee.

Whether or not the agent had notice of the draft attached to the bill is immaterial; the circumstances were such as to put him upon notice that this was not a straight bill of lading, and to protect his principal he should have made demand for the bill.  64 Ark. 169; 77 Ark. 487. See also 4 R. C. L. No. 294; 39 L. R. A. (N. S.) note, 309; 112 Fed. 86; 120 Pac. 39; 51 S. E. 695; 6 Cyc., p. 480-b. A misdelivery from fraud or mistake will not relieve the carrier.  90 Ark. 528, and cases cited; 115 Ark. 14. The telegram was not authority for delivery of the hay without the bill of lading.  It merely advised for whom the hay was intended.

Smith, J.  On November 10, 1920, C. F. Toll, trading as the Four Generations Hay Company, sold a car of hay to N. O. Ellis, and on the 20th of that month the hay was shipped from Roe, a station on the St. Louis Southwestern Railway Company, to C. F. Toll at Alexander, Arkansas, a village having a population of less than a hundred on the line of the Missouri Pacific Railroad. The hay arrived at Alexander two days after it was loaded, and the agent of the railroad, who knew there was no such person at Alexander as C. F. Toll, wired the consignor as follows:  "Hay billed C. F. Toll is here. Advise disposition."  In response to this telegram the consignor answered by wire as follows:  "Car hay billed C. F. Toll is for N. O. Ellis."  Upon receipt of this telegram, Ellis was notified that the car had been received, and it was delivered to him, and he proceeded at once to unload it.

It is stipulated that Ellis is insolvent, and this suit was brought by the consignor to recover the value of the

hay from the Missouri Pacific Railroad, the delivering carrier.

When the hay was loaded, the consignor took, in the name of the Four Generations Hay Company, a bill of lading, which named C. F. Toll as the consignee, and the bill of lading was attached to a draft drawn on Ellis and sent to his banking town for collection, but the draft was not paid by Ellis upon presentation for payment, and the bill of lading was never delivered to Ellis.

The case was by consent submitted by the court sitting as a jury, and there was a general finding and judgment in favor of the plaintiff, from which the company has appealed.

It is first insisted that the telegram of the company's agent was sent pursuant to § 909, C. & M. Digest, and that the answer to this telegram discharged the company from liability under the provision of that section. By that section of the statute it is provided that if the consignee shall refuse to accept freight tendered in pursuance of the bill of lading, the carrier charged with the duty of delivery shall give notice to the consignor of such refusal, and it is made the duty of the consignor, upon receipt of this advice, to give directions in regard to the disposition to be made of the shipment.

This section has no application because the consignee had not refused to accept the shipment and the consignor was not so notified. It appears from the agreed statement of facts that the station agent knew there was no such person there as C. F. Toll, and it was for this reason that he sent the telegram.

It is stipulated that the station agent had no knowledge that the consignor had drawn on Ellis with bill of lading attached to the draft, and an instruction was asked which declared the law to be that if the agent did not have this information he was not required to hold the hay until the bill of lading was delivered to him, but that he had the right to deliver the hay to Ellis.

A declaration of law was asked to the following effect: "That if by considering the two telegrams and

evidence together, without any knowledge that the draft and bill of lading had been placed in the bank for collection, a reasonably prudent man in position of defendant's agent at Alexander at the time he received the answer to his telegram might have been reasonably expected to infer from said telegram that the plaintiff was authorizing him to deliver said hay to Ellis, then plaintiff cannot recover.''

Another declaration was asked which declared the law to be that the agent under the circumstances was authorized to deliver the hay to Ellis.

The court refused to make the declarations requested, and this refusal is assigned as error.

It is insisted that the declarations requested should have been made upon the authority of the cases of *Nebraska Meal Mills* v. *St. L. S. W. Ry. Co.*, 64 Ark. 169, and *Templeton* v. *Equitable Mfg. Co.*, 79 Ark. 456. The argument is that the contract of shipment was complied with when a delivery was made to the designated consignee as directed by the telegram.

This court did hold in the case of *Nebraska Meal Mills* v. *St. L. S. W. Ry. Co.*, *supra*, and has reaffirmed that doctrine in later cases, that where freight was billed "straight" to the consignee and the railroad company had no notice of the intention of the consignor to retain the ownership and control of the property it is justified in presuming that the consignee is the owner thereof and is discharged from liability as a carrier by a delivery to the consignee at the place specified in the bill of lading.

But that doctrine has no application here because the delivery was not made to the consignee. Toll—and not Ellis—was the consignee, yet the delivery was made to Ellis, and this was done without Ellis having surrendered or ever having had possession of the bill of lading. The consignor did not bill the hay to itself but employed a different name, yet, upon the receipt of the telegram set out above, the carrier delivered the hay to one not named as consignee in the bill or lading.

It is obvious that the real question in the case is the effect of the telegram, for, if it did not authorize the agent's action, then the carrier is liable for the misdelivery of the shipment.

It will be observed that the telegram did not advise the agent to deliver the hay to Ellis, but stated merely that the hay was for him, and we think, under all the circumstances, the court was warranted in finding that the telegram was not an authorization to make a delivery contrary to the terms of the bill of lading.

It is a matter of common knowledge that shipments are frequently made by one person to another with direction in the bill of lading to notify still another, and that the purpose of the direction to so notify is that the consignee may have notice of the shipment and may take the necessary action to obtain a delivery of it, and we think the court was warranted in finding that such was the purport of the telegram from the consignor.

At § 294 of the article on Carriers in 4 R. C. L. p. 482, it is said: ''The fact that a bill of lading contains a direction to notify a certain person of the arrival of the goods is no indication that he has any interest in them, for, as is well known, the practice of 'notifying' a person of the arrival of goods is generally resorted to by the vendor who, while consigning goods to himself or to his own order, wishes at the same time to have the vendee notified of the arrival so that he may be afforded an opportunity of receiving them on payment of the draft drawn on him and the delivery of the bill of lading thereto attached. Therefore, in such a case, the carrier has no authority to make a delivery to the person so to be notified without the production of the bill of lading properly indorsed, or without being otherwise ordered by the shipper so to do, and if he does make such a delivery he becomes liable for the full value of the shipment.''

If the consignor had intended a delivery to Ellis without the surrender of the bill of lading, it would have billed the shipment to him direct. The agent knew there was no such person at Alexander as C. F. Toll, yet he

knew Toll was named as consignee. The shipment was not, therefore, on a "straight" bill of lading to Ellis, for he was not the consignee at all, and the telegram did not direct that delivery be made to him.

The facts known to the agent, that the hay was billed to an unknown and, perhaps, fictitious party, and that the shipper had advised that the hay was for a person not named as consignee, were sufficient to put the agent on notice that this was not a "straight" bill of lading, and if he knew it was not, or should have known this as an inference from the facts which he did know, then he should have demanded the production of the bill of lading before the delivery of the hay, at least we think the court might have so concluded from the facts stated.

We do not hold that the consignor could not, by a telegram, have directed that delivery be made to Ellis, without the surrender of the bill of lading. Upon the contrary, we are of opinion that, had this been the meaning of the telegram, the delivery to Ellis would have been a completion of the contract of carriage. But what we do hold is that, under the circumstances stated, the court was justified in finding that such was not the purport of the telegram; that it should have been interpreted by the agent as a mere direction to notify Ellis, a direction which might have been contained in the bill of lading itself without converting it from a "shipper's order" bill of lading to a "straight" bill of lading. The bill of lading in question was not a "straight" bill of lading, and the hay was not delivered to the consignee therein named, and, if the telegram did not confer authority to make delivery to a person other than the consignee, then no such authority existed, and, as we think the court was warranted in finding that such was not the purport of the telegram, the judgment must be affirmed, for the reason that the carrier failed to discharge its duty to deliver the hay to the proper party, and it is so ordered.