THE COMMERCIAL BANK OF MANITOBA

160  401
80a  148

*v.*

THE CHICAGO, ST. PAUL AND KANSAS CITY RAILWAY CO.

*Filed at Ottawa January 20, 1896—Rehearing denied March 28, 1896.*

1. APPEALS AND ERRORS—*finding of facts by Appellate Court different from trial court.* A finding of facts by the Appellate Court different from the trial court, incorporated in the final judgment, is conclusive.

2. CARRIERS—*delivery of goods to consignee discharges carrier.* The consignee is presumptively the owner of goods transported by a carrier, and delivery to him without notice of different ownership discharges the carrier.

3. SAME—*must deliver property to one claiming under bill of lading.* It is the duty of a carrier to ascertain whether a bill of lading was delivered to the shipper, and if so, to retain the property until demanded by one claiming thereunder.

4. BANKS—*time draft attached to bill of lading of goods—effect of acceptance.* A bank to which a bill of lading is forwarded, with a time draft attached, for collection, without special instructions, must surrender the bill of lading to the drawee upon his acceptance of the draft, and is not bound to retain it, as the inference is that the transaction is a sale on credit, and that the bill of lading is a security for an acceptance, and not for payment of the draft.

*C., St. P. & K. C. Ry. Co. v. Com. Bank*, 58 Ill. App. 438, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. NATHANIEL C. SEARS, Judge, presiding.

This was an action brought by the Commercial Bank of Manitoba, against the Chicago, St. Paul and Kansas City Railway Company, to recover the value of seven car-loads of potatoes consigned to J. W. Lewis, of Chicago, or to the order of J. W. Lewis. In the Superior Court the plaintiff recovered a judgment for $2305.21, which, on appeal, was reversed in the Appellate Court. The Appellate Court, upon reversing the judgment, made a finding of facts which was incorporated in the judgment, substantially as follows:

160—26

J. W. Lewis was a dealer in potatoes in Manitoba, and shipped them to Chicago for sale. Summers, Morrison & Co. were commission merchants at Chicago, and to them Lewis was in the habit of consigning potatoes for sale. He filed a notice with C. B. Gregory, the agent of plaintiff at Chicago, dated March 2, 1888, as follows:

"Deliver all cars of potatoes consigned to me at Chicago, to Summers, Morrison & Co. until further notice.

J. W. LEWIS."

The plaintiff in this case was in the habit of cashing drafts drawn by Lewis upon Summers, Morrison & Co. against consignments. On March 23, 1888, Summers, Morrison & Co. sent a letter to the plaintiff, saying: "This is to certify that we will promptly cash all drafts drawn on us by J. W. Lewis upon shipments of potatoes, with bills of lading of each car attached thereto."

On May 25, 1888, Lewis had bills of lading for seven car-loads of potatoes issued by the Canadian Pacific Railway Company, dated May 24 and 25, and each of which acknowledged the receipt from Lewis of a car-load of potatoes. In six of these bills Lewis was the consignee and in the seventh the consignment was to the order of Lewis. Possessed of these bills of lading, Lewis, on May 25, 1888, went to plaintiff's banking house in Manitoba and drew on Summers, Morrison & Co. seven sight drafts of the same date above, each for $350, payable to the plaintiff. To each of these seven drafts was attached one of the bills of lading, and each bill of lading bore the endorsement "J. W. Lewis." The potatoes reached Chicago on May 30, 1888, coming over the road of the defendant, and the drafts were sent by the plaintiff to the First National Bank for collection. They were presented to Summers, Morrison & Co., at Chicago, by said last named bank for payment on May 29, 1888. At this time the plaintiff had ten other drafts in the hands of the First National Bank, aggregating $4550, drawn by Lewis

upon Summers, Morrison & Co., which the plaintiff had cashed for Lewis and were about to go to protest. On May 29, 1888, the cashier of the First National Bank notified the plaintiff that the said seventeen drafts of Summers, Morrison & Co. were about to go to protest. On the same day Summers, Morrison & Co. sent a dispatch to J. W. Lewis, saying that the said seven sight drafts had been presented, making in all seventeen drafts, amounting to $7000, and advising Lewis that they could not pay the drafts and that they would go to protest, and also stating that he had no right to draw sight drafts. In reply, Lewis sent a telegram, dated May 29, 1888, to Summers, Morrison & Co., inquiring if they would pay at twenty days' sight the same drafts in this suit. They wired back: "We will accept last drafts twenty days' sight, and pay the others now due, if you will make good next week all you owe us, and upon no other condition. If accepted, wire back here to that effect, and tell them not to protest." On May 30, 1888, a dispatch was received by the First National Bank from the manager of the plaintiff, saying: "If Summers, Morrison & Co. pay ten drafts now due, you can take acceptance for the remaining seven at twenty days' sight. Mr. Lewis accepts conditions in the telegram to him of this date. Advise them, and wire me when the drafts are due." On May 30, 1888, Summers, Morrison & Co. received a dispatch from Lewis, as follows: "Commercial Bank has wired First National Bank to take your acceptance at twenty days' sight when ten drafts now due are paid. I accept condition in your telegram of this date."

Summers, Morrison & Co. thereupon paid in cash, on May 31, 1888, the ten drafts, aggregating $4550, to said First National Bank, and the seven drafts in controversy in this suit were at the same time changed by the First National Bank of Chicago to read, "twenty days after sight." After the drafts were so changed, Summers, Morrison & Co., in writing, accepted the same, on May

31, 1888. On the same day, the cashier of the First National Bank of Chicago advised the plaintiff, by telegram, that the ten drafts, aggregating $4550, had been paid. When the drafts were accepted by Summers, Morrison & Co. they did not call for the bills of lading. They remained with the First National Bank.

On the same day that Summers, Morrison & Co. accepted the drafts secured by the bills of lading in question, Lewis telegraphed to one F. N. Beatty at Chicago, as follows: "See C. B. Gregory, Agt. C., St. P. & K. C. Ry. (the defendant.) Say to him the First National Bank holds bills of lading on all cars from J. W. Lewis & Co., Chicago." Lewis sent this telegram after showing it to the manager of the plaintiff and after consultation with him. Beatty showed this telegram the same evening (May 31) to Gregory, who was the defendant's freight agent, and Gregory wrote on the back of this telegram in pencil, "Are your cars to be delivered only on order of First National Bank?" and handed it back to him. Gregory testified that the memorandum he made on the telegram was for Beatty to use if he desired, and give Gregory a decision of what Beatty wanted to do. Gregory also testified that next forenoon Beatty called on Gregory and told him, in substance, "Go ahead and make the delivery of the potatoes in the same manner we had been doing on Mr. Lewis' standing order to Summers, Morrison & Co." The defendant subsequently delivered the potatoes in question to Summers, Morrison & Co. on sundry days, beginning June 1 and ending June 15. The seven drafts were not paid at maturity, and on January 23, 1889, plaintiff commenced suit against Summers, Morrison & Co. upon their acceptance of said drafts, in the United States Circuit Court at Chicago, and recovered judgment for $2551.78.

Upon the facts as found the Appellate Court reversed the judgment of the Superior Court and refused to remand the cause.

PECKHAM & BROWN, for appellant:

The insertion of the name of the consignee specified by the receipt, in a way-bill drawn up by the last carrier, is notice that the goods are to be delivered to that person or his assignee, and the carrier is liable for conversion of the goods if he delivers them otherwise. *Railroad Co.* v. *Commercial Nat. Bank*, 123 U. S. 727; *Railroad Co.* v. *Herndon*, 81 Ill. 143; *Railroad Co.* v. *Parks*, 54 id. 294; *Furman* v. *Railroad Co.* 106 N. Y. 579; *Alderman* v. *Railroad Co.* 115 Mass. 233.

The acceptance of a draft to which a bill of lading is attached does not, of itself, pass any title to the goods, and does not justify a carrier in delivering them to the acceptor without the production of the bill. *Bank of Commerce* v. *Merchants' Bank*, 91 U. S. 92; *"The Thames,"* 14 Wall. 98; *Gilbert* v. *Guignon*, L. R. 8 Ch. App. 16; *Seymour* v. *Newton*, 105 Mass. 272; *Stollenwerck* v. *Thacher*, 115 id. 224; *Newcomb* v. *Railroad Corp.* id. 230.

GARDNER & McFADON, for appellee:

A common carrier may always excuse failure to deliver to a claimant by showing that he delivered to the true owner. *Brunswick* v. *Express Co.* 46 Iowa, 677; Porter on Bills of Lading, sec. 464, and cases cited.

The effect of the endorsement and delivery of a bill of lading is to transfer to the endorsee or holder such right to or property in the goods thereby represented as it was the intention of parties to pass, and that intention is to be gathered from all the circumstances attending the transaction. *Emery* v. *Bank*, 25 Ohio St. 360; Porter on Bills of Lading, sec. 508.

The property acquired in goods covered by a bill of lading, by one to whom the latter is pledged as collateral security for the discount of the draft drawn against it, is a special property. His title is conditional, and in case of a time draft it is conditional upon the consignee's acceptance, and is by such acceptance divested. Porter

on Bills of Lading, secs. 521, 523; *Bank* v. *Wright,*48 N.Y. 3; *Bank of Commerce* v. *Merchants' Bank,* 1 Otto, 92; *Lanflar* v. *Bossom,* 1 La. Ann. 148; *Insurance Co.* v. *Bank,* 21 Up. Can. (Q. B.) 284; *Shepherd* v. *Harrison,* L. R. 4 Q. B. 493; *Coventry* v. *Gladstone,* L. R. 4 Eq. 493; *Gurly* v. *Behrend,* 3 El. & Bl. 622; *Allen* v. *Williams,* 12 Pick. 301.

In an extended review of the authorities in *Dodge* v. *Meyer,* 61 Cal. 417, the same conclusion is reached, where the following authorities are cited: *Bank* v. *Jones,* 4 N.Y. 497; *Dowd* v. *Greene,* 24 id. 638; *Bank* v. *Kelley,* 57 id. 360.

Per CURIAM: Where the Appellate Court finds the facts different from the trial court, and incorporates such finding in its final judgment, under the statute the finding of facts is conclusive. Under the facts as found, did the Appellate Court err in holding that the plaintiff could not recover?

A common carrier, to discharge his liability for goods transported by delivery, must deliver to the person who is lawfully entitled to receive the same. The consignee is presumptively the owner of the goods, and must be treated by the carrier as such owner until he has notice to the contrary, and delivery to him without notice will discharge the carrier. (Ray on Carriers, 896; Hutchinson on Carriers, sec. 130.) The carrier should ascertain whether a bill of lading was delivered to the shipper, and if so, he should retain the property until demanded by one claiming under that title. (*Furman* v. *Pacific Railroad Co.* 106 N. Y. 579; *City Bank* v. *Rome, etc. Railroad Co.* 44 id. 136; *First Nat. Bank of Peoria* v. *Northern Railroad Co.* 58 N. H. 203.) Too great care cannot be exercised in respect of the right of the person to whom the delivery is made. (Ibid.)

The question in this case is, whether a bill of lading deliverable to order, when attached to a time draft, and forwarded, with the draft, for collection without any special instructions, may be surrendered to the drawee

on his acceptance of the draft, or whether the bill of lading, after acceptance, should still be retained by the person to whom it has been sent.

Whatever may be the rule in the case of a sight draft attached to the bill of lading, the authorities seem to hold that a bill of lading deliverable to order, when attached to and forwarded with a time draft sent without special instructions to an agent for collection, may be surrendered to the drawee on his acceptance of the draft, and that it is not the agent's duty to hold the bill of lading after such acceptance. In the absence of any agreement to the contrary, the inference to be drawn from a time draft accompanied by a bill of lading is, that the transaction amounts to a sale on credit, and that the bill of lading is a security for the acceptance, and not for the payment of the draft. (*National Bank* v. *Merchants' Bank*, 91 U. S. 92; Porter on Bills of Lading, sec. 521.) In the section cited the author says: "The property acquired in the goods covered by a bill of lading by one to whom the latter is pledged as collateral security for the discount of the draft drawn against it, is, of course, a special property. His title, in other words, is conditional. In the case of a time draft, it is conditional upon the consignee's acceptance, and by such acceptance it is divested. The title and the right of possession at once pass to the consignee, and the former holder is left recourse only against the consignee as acceptor. The pledge is a pledge to secure acceptance, and the title of the pledgee is, therefore, extinguished when the purpose of the pledge is thus fulfilled." Or it may be expressly stipulated that the bill of lading shall secure not only the acceptance, but the payment of the draft drawn against it. In such case the pledgee's title would not be divested by acceptance, but would continue until the draft had been paid. In the *National Bank case, supra*, it is among other things said: "In the absence of any express arrangement to the contrary, the acceptor, if a purchaser, is clearly

entitled to the possession of the goods on his accepting the bill, and thus giving the vendor a completed contract for payment. This would not be doubted, if, instead of an acceptance, he had given a promissory note for the goods, payable at the expiration of the stipulated credit. In such a case it is clear that the vendor could not retain possession of the subject of the sale after receiving the note for the price. The idea of a sale on credit is, that the vendee is to have the things sold on his assumption to pay, and before actual payment. The consideration of the sale is the note. But an acceptor of a bill of exchange stands in the same position as the maker of a promissory note. If he has purchased on credit, and is denied possession until he shall make payment, the transaction ceases to be what it was intended, and is converted into a cash sale."

Under the authorities we think it is plain that the drawee, by acceptance of the draft, becomes entitled to the goods shipped and to have the bill of lading surrendered or indorsed to him. The transfer of the bill of lading in such case operates to clothe the acceptor with evidence of title to the goods as the purchaser. As held in the case of *National Bank* v. *Merchants' Bank, supra,* the holder of a bill of lading, who has become such by indorsement and by discounting the draft drawn against the consigned property, succeeds to the right of the shipper, and has the same right to demand acceptance of the accompanying draft, and no more, and if the shipper cannot require such acceptance without surrendering the bill of lading, neither can the holder. The drafts were originally sight drafts, but the parties in interest, by agreement, changed them, allowing twenty days after sight for payment. After such change they were accepted, and the acceptors became entitled to the bills of lading, and the defendant, by delivering the goods to them, did not incur any liability.

Counsel for appellant have cited *Newcomb* v. *Boston and Lowell Railroad Co.* 115 Mass. 230, as an authority sustaining their view.    We find no fault with the law declared in that case, but there the drafts involved were sight drafts, and the law as there laid down can have no application to this case.

*Ontario Bank* v. *New Jersey Steamboat Co.* 59 N. Y. 510, has also been cited.    In that case plaintiff brought an action against the defendant, as common carrier, for the alleged conversion of a quantity of wool, but on a trial he failed to recover, and the judgment, on appeal, was affirmed.    The decision of the case, however, turned on a question not here involved.    If there had been an agreement that the bill of lading should secure not only the acceptance but the payment of the drafts, plaintiff might be entitled to recover.    But such was not the case.

We think the judgment, on the facts as found, fully sustained by authority, and it will be affirmed. ·

*Judgment affirmed.*