[No. 18533.    Department Two.    November 6, 1924.]

CITIZENS BANK & TRUST COMPANY, *Appellant*, v. EVERBEST SHINGLE COMPANY, *Respondent*.[1]

CARRIERS (14-2) — BILLS AND NOTES (35-2) — DRAFTS — ACCEPTANCE AND PAYMENT — DELIVERY OF BILL OF LADING — LIABILITY. A bank, making advances and taking the shipper's time draft, with bill of lading of a car of shingles, consigned to the shipper's order, must not deliver the bill of lading to the buyer until the draft on him is paid, and is liable for the loss where it detached and delivered the draft on receipt of a check which was dishonored.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered August 3, 1923, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

[1]Reported in 229 Pac. 743.

*W. P. Bell,* for appellant.

*Stiger & Kaune,* for respondent.

PEMBERTON, J.—This is an action by appellant to recover the amount of $800 upon a shipper's note of respondent. The court entered findings and judgment in favor of respondent, from which judgment this appeal is taken.

On July 29, 1920, respondent, upon the order of one Grover C. Payne of Marion, Louisiana, delivered car number 28625 loaded with shingles, to the Northern Pacific Railway Company, and took from the Railway Company what is known as a negotiable shipper's order bill of lading showing that the car was billed to the order of respondent, the shipper, Marion, Louisiana, and had the notation thereon "Notify Grover C. Payne." The order bill of lading was printed on yellow paper and the straight bill of lading was on white paper. These shingles were sold to Payne f. o. b. car, Marion, Louisiana. Mr. Payne was to pay the freight and receive credit upon the purchase price for the amount so paid.

On August 4, 1920, respondent delivered this order bill of lading endorsed in blank, together with an invoice of the shingles and draft on Payne in the sum of $900 payable to the bank. This $900 was the estimated net amount of the shipment, the gross amount being $1,386.60. The invoice was dated July 29, 1920, and was assigned in writing by respondent to appellant, and there was a statement thereon as follows: "Due on or before 60 days from date of shipment. Paid freight bill taken in payment after deducting taxes." The appellant detached the $900 draft from the invoice and sent one copy of the invoice and the bill of lading directly to Payne. Thereafter Payne sent a check drawn on his home bank for the amount

of $1,056.45 to appellant for the invoice price less the receipted freight bill. Appellant credited the shingle company's account with $132.25, being the amount over and above $900 paid by the bank to respondent at the time of receiving the bill of lading. The check sent by Payne was dishonored and never has been paid and appellant seeks to recover the amount advanced to respondent upon the shipment, together with the interest.

It is the contention of appellant that it was the duty of respondent to tell appellant that it did not know the standing of Payne and desired to protect itself by holding the bill of lading until payment was made, or by stating in the assigned account that it was payable upon the arrival of the shipment, relying upon the following authority:

"Where time drafts were left with the bank for collection, with bills of lading attached, the burden is on the drawer to show that the bank was instructed to hold the bills of lading until the drafts should be paid." *Second Nat. Bank of Columbia v. Cummings,* 89 Tenn. 609, 18 S. W. 115, 24 Am. St. 618.

See, also, *National Bank of Commerce of Boston v. Merchants National Bank of Memphis,* 91 U. S. 92, 23 L. Ed. 210; *Commercial Bank of Manitoba v. Chicago, St. P. & K. C. R. Co.,* 160 Ill. 401, 43 N. E. 756; *Moore v. Louisiana National Bank,* 44 La. Ann. 99, 10 South. 407, 32 Am. St. 332.

The general rule seems to be the reverse.

"But a bank which receives a sight draft for collection should not surrender an accompanying bill of lading until the draft has been paid, and a bill of lading made deliverable to the consignor or his order, and accompanying a time draft, must be retained by a collecting bank, after acceptance of the draft, to secure its payment." 3 R. C. L. 613.

"Bills of lading that accompany drafts drawn on time must be surrendered after their acceptance, and retained with bills drawn on sight, until they are paid. But if a bill of lading accompanying a time draft is to the order of the consignor, and is endorsed by him to the cashier of a bank to which it is to be transmitted for collection, the bill must be held by the collecting bank until payment of the draft." Bolles Modern Law of Banking, vol. 2, p. 543.

"It follows that McLaren & Co. remained the owners of the wheat, notwithstanding their transmission of the invoices to Smith & Co. As owners, then, they had a right to transfer it to the plaintiff as a security for the acceptance and payment of their drafts drawn against it. This they did by taking bills of lading deliverable to the cashier of the plaintiff, and handing them over with the drafts when the latter were discounted. These bills of lading unexplained are almost conclusive proof of an intention to reserve to the shipper the *jus disponendi*, and prevent the property in the wheat from passing to the drawees of the drafts." *Dows v. National Exc. Bank of Milwaukee*, 91 U. S. 618, 23 L. Ed. 214.

Where a time draft attached to a shippers' order bill of lading is left with a bank for collection, the bank must hold the bill of lading until the draft is paid, as security for the payment of the draft as a cash transaction. In this case appellant detached the bill of lading from the draft and sent the bill of lading to Payne without attempting to secure payment of the draft.

The judgment of the trial court is affirmed.

MAIN, C. J., MITCHELL, BRIDGES, and FULLERTON, JJ., concur.