The Farmers and Mechanics' National Bank of Buffalo, Respondent, *v.* Joseph M. Hazeltine et al., Appellants.

S. & D., correspondents and agents at Buffalo of B. of New York, to fill an order from B., purchased in their own name a boat load of wheat, which was delivered on board a canal boat. S. & D. were not furnished by B. with money or credit wherewith to make the purchase; but in accordance with their understanding and course of business they raised the funds by procuring plaintiff to discount a draft drawn by them on B. on delivery, as collateral, of a bill of lading of the wheat, wherein it stated that the wheat was shipped to New York to account and order of plaintiff. Plaintiff, upon acceptance of the draft, delivered the bill of lading to B., with an indorsement thereon, to the effect that the wheat was pledged to it for the payment of the draft, and was placed in B.'s custody, "in trust for that purpose," and not to be diverted to any other purpose until the draft was paid. The wheat, on arrival, was delivered by the carrier on the order of B. to defendants, who were warehousemen, in store. B. sold the wheat to A., to whom defendants made advances thereon to pay therefor; and subsequently delivered the wheat to him on B.'s order. Before such advances and delivery defendants had seen a copy of the bill of lading and of the indorsement thereon. In an action for a conversion of the wheat, *held*, that such delivery of the bill of lading did not vest in B. a title to the wheat or confer upon him authority to sell, but simply vested him with the possession to hold in trust for plaintiff; that plaintiff's title could not be divested by any act of B., until payment of his acceptance; therefore that defendants were liable.

(Argued June 9, 1879; decided September 16, 1879.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought for the alleged conversion of a boat load of wheat.

One Brown, who was a commission merchant and dealer in produce at New York, sent the firm of Sears & Daw, grain commission merchants, and his correspondents at Buffalo, an order to buy for him a cargo of wheat. Brown furnished no money or credit with which to make the purchase, but the understanding and mode of business was that Sears & Daw should purchase the grain on their own account, procuring the funds by discount of drafts on Brown secured by transfer of the wheat. On receiving the order Sears & Daw applied to plaintiff for the discount of a draft on Brown for the purchase-price to be secured by a transfer of the wheat, to which plaintiff assented. Sears & Daw having purchased the wheat shipped the same by canal boat to New York taking therefor a bill of lading, running to : "Account and order Farmers and Mechanics' National Bank of Buffalo. Notify E. S. Brown, New York." Sears & Daw drew their draft at twenty days on Brown, and procured the same to be discounted by the plaintiff and upon such discount delivered to plaintiff the bill of lading and insurance receipt. The proceeds of the discount paid for the wheat. Afterwards and before sending them forward to New York, the plaintiff caused to be stamped upon the bill of lading the special indorsement as follows :

" To E. S. BROWN :

" The property mentioned in this bill of lading, with insurance on the same, is pledged to the Farmers and Mechanics' Bank of Buffalo as security for the payment of the accompanying draft for $7,791.77, and the property is placed in your custody in trust for that purpose, and is not to be diverted to any other use until the draft is paid; and upon your accepting and paying the draft the claim of the bank will cease. Without recourse.

"F. SIDWAY, *Cashier.*"

And upon the draft was indorsed the following : "The documents hereunto annexed are to be delivered to drawee on acceptance." The draft was also indorsed by the plaintiff for collection, and with the bill of lading and insurance receipt immediately sent forward to a New York bank. The New York bank presented the draft for acceptance to Brown and upon acceptance delivered to him the bill of lading and insurance receipt. When the wheat arrived in New York the carrier by the order of Brown delivered it to defendants, who were warehousemen, in store. Brown had sold the wheat "on 'change" to one Atkinson, and it was so delivered to defendants in pursuance of an arrangement between Brown and Atkinson, defendants making an advance thereon to pay the purchase-price. Defendants subsequently delivered the wheat to Atkinson on Brown's order. Before such advance and delivery was made defendants were shown a copy of the bill of lading, and of the indorsement thereon. Brown failed before the maturity of the draft.

*C. Van Santvoord*, for appellants. The wheat having been delivered to Brown under circumstances showing an intent to pass the title, defendants, as *bona fide* purchasers, acquired a good title. (*Woodley* v. *Brown*, 1 Car. & P., 593–597; *Howes* v. *Ball*, 7 Barn. & Cress., 481; *Rawls* v. *Deshler*, 3 Keyes, 572; 4 Abb. N. Y. Ct. App. Dec., 12; *Smith* v. *Lyons*, 1 Seld., 41; *Waite* v. *Green*, 36 N. Y., 556; *Ballard* v. *Burgett*, 40 id., 314; *Fleeman* v. *McKean*, 25 Barb., 474, 477; *Dows* v. *Dennistoun*, 28 id., 393; *Paddon* v. *Taylor*, 44 N. Y., 371–375; *Mowrey* v. *Walsh*, 8 Cow., 238; *Dows* v. *Nat. Bk.*, 1 Otto, 618; *Thames*, 14 Wall., 98; *City Bk.* v. *R.*, *W. and O. R. R. Co.*, 44 N. Y., 136; *First Nat. Bk. Toledo* v. *Shaw*, 61 id., 683; *Henderson & Co.* v. *Comptoir Descompte de Paris*, L. R. [5 P. C.], 253.) Delivery of a bill of lading by the owner of the goods, showing a shipment for account of a transferee, and the indorsement and delivery of a bill of lading by one for whose account a shipment is made to a third party for a valuable

consideration, transfers the legal title and property. (*Dows* v. *Rush*, 28 Barb., 185; 24 N. Y., 638; *Blossom* v. *Champion*, 28 Barb., 223; *Dows* v. *Greene*, 32 id., 490, 504–508; *Lickbarrow* v. *Mason*, 2 T. R., 70; 1 H. Bl., 357; *Parker* v. *Patrick*, 5 T. R., 175; *Conrad* v. *Atlantic Ins. Co.*, 1 Peters, 386–444–445; *Gibson* v. *Stevens*, 8 How., 384–400; *Bank of Rochester* v. *Jones*, 4 Coms., 497; *Keyser* v. *Harbeck*, 3 Duer, 373; *Walter* v. *Rose*, 2 Wash. C. C. R., 283; *Nathan* v. *Giles*, 5 Taunt., 558, 573; *Morrison* v. *Gray*, 9 Moore's C. B. R., 484; *Mary Ann Guest*, 1 Blatchf. C. C. R., 358.) Atkinson was not bound to inquire into any equities which attached to the title to the wheat. (*Henderson* v. *Comptoir Descompte*, L. R. [5 P. C.], 253.) The diversion by Brown of the proceeds of the draft to other purposes than payment of the draft could not affect the purchaser. (1 R. S., 730, § 66; 3 R. S. [2d ed.], 586, reviser's note; *Graff* v. *Bonnell*, 31 N. Y., 9; *Campbell* v. *Foster*, 35 id., 361, 372; *Roosevelt* v. *Roosevelt*, 6 Hun, 31–44; affirmed, 64 N. Y., 654; *Locke* v. *Mabbett*, 2 Keyes, 457, 460.)

*Freeman J. Fithian*, for respondent.

ANDREWS, J.   The decisions of this court in the cases of this plaintiff against *Logan & Preston* (74 N. Y., 568), and of the same plaintiff v. *Atkinson* (74 id., 587), are decisive of this appeal.   The latter case was against the purchaser from Brown of the same cargo of wheat in question in this case, to whom the wheat had been delivered by the defendants in this case upon the order of Brown, from whom the defendants had received it in store.   The judgment recovered by the plaintiff against Atkinson not having been collected or paid, this action was brought against the defendants for the conversion of the wheat.   It is not claimed that the defendants stand in any better position than Atkinson or that they have any defense which would not have been equally available to him.   Indeed it appears affirmatively that the defendants before they advanced upon the wheat to Atkinson or de-

livered it to him, saw a copy of the bill of lading and the indorsement thereon and had actual notice thereby of the respective rights of the plaintiff and Brown by virtue of the bill of lading and the indorsement.    In the case of Atkinson, it did not appear that the latter had actual notice of the contents of these documents at the time of purchase.

The cases mentioned were determined by this court upon the legal construction of the bill of lading and the special indorsement in connection with the extrinsic facts which in all material respects are identical with the facts in this case. The court held that the plaintiff, by virtue of the transaction with Sears & Daw, and the transfer to it by them of the bill of lading, became the legal owner of the wheat, and that the delivery of the bill of lading to Brown with the special indorsement of the plaintiff thereon, did not vest in him the title to the property, or confer upon him authority to sell the wheat, but that Brown by the transaction was simply vested with the possession under a trust to hold the wheat for the plaintiff, and that the plaintiff's title could not be divested by any act of Brown until the actual payment of his acceptance.

The controversy turns upon the legal effect of the delivery of the wheat to Brown under the terms of the special indorsement of the bill of lading.    If the delivery under this instrument vested the title to the property in Brown, and the trust contained in the instrument was a trust affecting the proceeds to be realized from a sale, then, upon well settled principles, a *bona fide* purchaser from Brown would acquire a good title which would not be divested or disturbed by a misappropriation by Brown of the proceeds of the sale in contravention of the trust.    But this construction of the instrument was rejected by the court in the former cases after full consideration.    The court did not question the well established doctrine that a general indorsement and delivery of a bill of lading vests in the indorsee the title to the bill, and the property thereby represented, so as to enable him to transfer to a *bona fide* purchaser, for value, a good title, what-

ever secret arrangement may have existed between the original parties. But the court in the cases referred to, decided that the indorsement in question did not have the effect of a general indorsement, and that in connection with the special contract overwritten it showed that Brown's right was simply that of depositary of the grain with no authority to sell until the draft should be paid, and that when the sales in question were made, Brown had no title and could confer none.

We have attentively considered the able argument of the counsel who represented the defendants on this appeal, but after full consideration we adhere to the conclusions reached in the former cases.

The judgment should be affirmed.

All concur.

Judgment affirmed.