WEYAND v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.

1. **Jurisdiction:** OF FOREIGN CORPORATION: ACTION AIDED BY ATTACHMENT: FORMER ADJUDICATION. Under section 2580 of the Code, an action against a foreign corporation may be maintained in the courts of this state when it is aided by attachment against the property of such corporation found within this state; and a judgment of a federal court in this state, dismissing a former action based on the same cause, but not aided by attachment, on the ground that it had no jurisdiction of the defendant, is no bar to the subsequent action aided by attachment.

2. **Carriers:** OF GOODS: DELIVERY TO HOLDER OF UNASSIGNED BILL OF LADING: LIABILITY. A company, shipping goods upon the order of E., marked and consigned them to itself at P., the place where E. lived. It took two bills of lading for the goods, which were in fact duplicates, but neither showed that another had been issued. It then drew a draft on E., through a bank at P., for the price of the goods, and sent with it to the bank an order on defendant to deliver the goods to E., with directions to the bank to deliver the order to E. upon the payment by him of the draft. At the same time it sent one of the bills of lading to E., instructing him that the goods had been shipped, and that he was to pay the draft and obtain the order. The bill of lading sent to E. showed the consigning company to be the consignee, and it was not indorsed or assigned by that company. Upon presentation of this bill of lading the defendant railway company delivered the goods to E., who was at the time insolvent, and who never paid for the goods. *Held* that such delivery was without warrant, and that the defendant company was liable to the consigning company for the value of the goods, though it was ignorant of E.'s insolvency, and that the goods had not been paid for, and that a draft and order had been sent and instructions given in regard to the goods. (See opinion for a discussion of the question upon the authorities, by ROBINSON, J.)

3. ———: ———: ———: CUSTOM. In such case it was no defense that there was a local custom at P. to deliver goods to the person who held the bill of lading, such custom not being general, and the consigning company having no knowledge of it when the goods were shipped.

*Appeal from Cedar Rapids Superior Court.*—Hon. J. T. Stoneman, Judge.

Filed, October 22, 1888.

This is an action aided by attachment, brought to recover the value of a quantity of canned goods, shipped by the Elgin, Iowa, Canning Company to Pueblo, Colorado, and alleged to have been delivered to a person not entitled to receive the same, through the fault of defendant. The cause was tried to the court, and a judgment rendered in favor of plaintiff for the amount admitted to be the value of the goods in controversy, and sustaining the attachment. Defendant appeals. On the first submission of this cause a decision was rendered by this court reversing the judgment of the superior court. A rehearing was ordered on the petition of appellee, and the cause again submitted.

*George R. Peck* and *Anderson, Davis & Hagerman,* for appellant.

*Henry Rickel,* for appellee.

Robinson, J.—Plaintiff is the trustee of the Elgin, Iowa, Canning Company. Defendant is a corporation organized and existing under the laws of the state of Kansas, and engaged in operating a line of railway from Kansas City through the states of Kansas and Colorado; and to the city of Pueblo, in the last-named state. At the time this cause was tried in the court below defendant had never owned nor operated any railway within the state of Iowa. In October, 1884, one Evans, of Pueblo, ordered of the canning company the goods in controversy. Not being acquainted with Evans, and not wishing to sell the goods on credit, it delivered them, marked and consigned to itself at Pueblo, to a railway company at Elgin, Iowa. From that company the canning company took two receipts or bills of lading, which were in fact duplicates, but neither showed

that another had been issued. The canning company drew a draft on Evans, through a bank in Pueblo, for the price of the goods, and sent to the bank an order on defendant to deliver the goods to Evans. The draft and order were sent together to the bank, with instructions to deliver the order to Evans upon payment by him of the draft. At the same time the canning company sent to Evans one of the bills of lading, instructing him that the goods had been shipped, and that he was to pay the draft and obtain the order. The bill of lading sent to Evans was not signed nor indorsed by the canning company. In due time the goods were transferred by the railway company which first received them to defendant, and were by it transferred to Pueblo. Evans never paid the draft nor obtained the order, but within twenty-four hours after the arrival of the goods in Pueblo, he presented the bill of lading which he had received to defendant, and without other authority obtained the goods. At that time Evans was insolvent, but defendant had no knowledge of that fact, nor that the goods had not been paid for, nor that a draft and order had been sent or instructions given in regard to the goods, but delivered them in good faith. The canning company commenced an action to recover of defendant the value of the goods in question, which was transferred to the circuit court of the United States for the northern district of Iowa. The answer in that case alleged that defendant was a corporation organized and existing under the laws of Kansas for the purpose of operating a line of railway, but was not organized for the purpose of nor engaged in operating a railway within this state; that no part of the road of defendant was or had ever been operated in this state, and that the claim of plaintiff did not grow out of, and was not in any manner connected with, any office or agency of defendant in this state. A demurrer to that answer was overruled, and, in consequence, the canning company dismissed its action. It afterwards appointed plaintiff, who is a citizen of Kansas, its trustee to collect the claim in suit. This action was commenced, and the Burlington, Cedar

Rapids & Northern Railway Company, a corporation doing business and with its principal office in Linn county, was garnished by virtue of the attachment process. The answer of the garnishee showed that it had in its possession when garnished the sum of fifteen hundred dollars which belonged to defendant.

I. Appellant insists that the superior court had no jurisdiction in this cause, for reasons set out in its answer in the action which was transferred to the federal court, and that the question of jurisdiction of the claim in suit was finally adjudicated in that action. The opinion of the federal court is found in 24 Fed. Rep. 866. We do not regard the decision of that court as conclusive of the right of plaintiff to maintain this action, even though it be conceded to have the force and effect of a final adjudication. It was based upon the facts as they existed in that case. It did not pass upon the right of the canning company to recover of defendant excepting in that action, "under the facts disclosed in the record" therein. One vital fact was that no attachment of property of defendant was disclosed. The defendant at the time this action was commenced had never owned nor operated a line of railway in this state, nor had it ever had therein any office or agency out of which plaintiff's cause of action grew. Therefore, neither of sections 2582 and 2585 has any application to the case. The defendant was not found within this state and had no residence therein; hence section 2586 of the Code does not apply. Section 2580 provides as follows: "An action, when aided by attachment, may be brought in any county of the state wherever any part of the property sought to be attached may be found when the defendant, whose property is thus pursued, is a non-resident of this state." The legal home of defendant is in the state of Kansas. *Ex parte Schollenberger*, 96 U. S. 369. It is a non-resident of this state, and, having property in Linn county when this action was commenced, falls within the provision quoted.

1. JURISDICTION: of foreign corporation: action aided by attachment: former adjudication.

The federal court decided that jurisdiction of the defend-ant had not been acquired, and therefore that judgment could not be rendered against it. This action is in the nature of a proceeding to subject certain property found within the jurisdiction of the superior court to the payment of plaintiff's claim. The first was a personal action, and jurisdiction of defendant was necessary to its presentation. This is in the nature of an action *in rem*, and the court, having jurisdiction of the property sought to be appropriated, could acquire such jurisdic-tion of the defendant as was necessary for the purposes of the action, by the personal service of the original notice, or by its publication. It will hardly be claimed, if defendant engaged in operating a line of railway within this state after the action in the federal court had been dismissed, that the decision in that action would bar a second suit. In our opinion there is no more reason for holding it to be a bar in this action than there would have been in the case supposed. The case of *Ex parte Railway Co.*, 103 U. S. 794, is not in conflict with the views we have expressed. Section 739 of the Revised Statutes of the United States prohibits the bringing of a civil suit other than a suit in equity to enforce a lien against an inhabitant of the United States by original process in any other district than that of which he is an inhabitant or in which he is found at the time of serving the writ. Section 2, chapter 120, 21 U. S. Statutes at Large, p. 155, requires civil suits not of a local nature to be brought in the division of the district of Iowa where the defendant resides, and the case last cited was based upon those statutes. But sections 2582 and 2585 of the Code are not restrictive, but were designed to give to plaintiffs additional facilities for bringing actions against the parties therein named. There is no ground for believing that the general assembly designed to exempt the property of non-resident corporations from judicial process in any case where the property of other non-resident debtors could be taken.

II. Appellant insists that it was not in fault in

delivering the goods to Evans, for the reason that the delivery to him of the bill of lading was in effect an assignment of the goods, and invested him with a right to demand and receive them. We are referred to many authorities which are claimed to support this view. One of these is *Merchants' Bank v. Union Ry. & Trans. Co.*, 69 N. Y. 374. An examination of that case and of the cases therein cited will show that what the court really decided was that a delivery of the forwarder's receipt without assignment, but with intent that the title to the goods for which it was given, or an interest therein, should be thereby transferred, would be effectual to accomplish the transfer intended. Other authorities cited by appellant are to the same effect. In this case it was the intention of the canning company to retain the title and right of possession in itself until the price of the goods should be paid. The bill of lading required the delivery of the goods to the consignor. It did not provide for delivery to bearer or order, but to the Elgin Canning Company. Therefore it is clear that the forwarding of the bill of lading to Evans, with directions to pay the draft and obtain the order for the goods, did not invest him with any right to the goods as against the consignor. But it is said that defendant was justified in delivering the goods to Evans because of his possession of the bill of lading. The cases of *Lickbarrow v. Mason*, 1 Smith, Lead. Cas. *838, with annotations; *Dows v. Green*, 24 N. Y. 638; *Allen v. Williams*, 12 Pick. 297, and others, are cited in support of this claim. It is true that statements were made in some, if not all, of those cases which, considered apart from the connection in which they are found, might seem to sustain the claim; but when they are considered in connection with the facts of the cases where found, and the general conclusions of the court which made them, we think they go no further than to hold that the delivery of an undorsed bill of lading would be a good symbolical delivery of the goods it represented, where such was the intent and purpose of the parties. In *Fearon v. Bowers*,

2. CARRIERS: of goods: delivery to holder of unassigned bill of lading: liability.

reported in 1 Smith, Lead. Cas. *782, cited by appellant, the consignor had sent two bills of lading, one of which was indorsed to one person and the other to another, and the court held that a delivery might be made to the holder of either bill. That case has but little relation to the principle involved in this. Appellant insists that the bill of lading is like a promissory note, in that possession is *prima-facie* evidence of ownership ; but we do not think that such is the case. A bill of lading is a non-negotiable instrument. *Garden Grove Bank v. Humeston & S. Ry. Co.*, 67 Iowa, 534. The following language is pertinent : "Bills of lading are regarded as so much cotton, grain, iron, or other articles of merchandise. * * * They are in commerce a very different thing from bills of exchange and promissory notes, answering a different purpose and performing a different function." Also : "It is not a representative of money, used for transmission of money or for the payment of debts or for purchases. It does not pass from hand to hand as bank-notes or coin. It is a contract for the performance of a certain duty. True, it is a symbol of ownership of the goods covered by it, —a representative of those goods ; but if the goods themselves be lost or stolen, no sale of them by the finder or thief, though to a *bona-fide* purchaser for value, will divest the ownership of the person who lost them, or from whom they were stolen." *Shaw v. Railroad Co.*, 101 U. S. 557. See, also, Hutch. Carr. sec. 348. In 2 Pars. Cont. 292, it is said : "The consignor frequently sends to a consignee a bill not indorsed, and then sends to his own agent in or within reach of the same port an indorsed bill,—it may be indorsed in blank, or to the agent, or to the party ordering the goods,— and the consignor sends to his agent with the bill orders to deliver the bill to the party ordering the goods, or to receive the goods and deliver them to him, provided payment be made or secured, or such other terms as the consignor prescribes are complied with. This course secures to the consignor, beyond all question, the right and power of retaining the goods until the price for them

is paid or secured to him." This is not only in point, but seems to be sound in principle. The fact that Evans presented the bill of lading in this case was not sufficient to overcome the presumption which the terms of the bill raised, that the consignor was the owner of the goods. That such is the presumption is well established. *Congar v. Galena U. Ry. Co.*, 17 Wis. 485; *Krulder v. Ellison*, 47 N. Y. 37; *Lawrence v. Minturn*, 17 How. 100; *Alderman v. Eastern Ry. Co.*, 115 Mass. 234. See, also, *Tuttle v. Becker*, 47 Iowa, 486; 1 Benj. Sales, secs. 577, 579; 2 Amer. & Eng. Cyclop. Law, 242, 243. The contract with the canning company required the defendant to deliver the goods to the consignor. The unindorsed bill of lading presented by Evans was evidence that the contract was still in force, and that the canning company was then the owner of the goods. The delivery to Evans was not authorized, and was made by defendant at its own risk. Hutch. Carr. secs. 129, 130, 344. But it is said that the canning company clothed Evans with the apparent right to demand the goods, and that, since " one of two innocent parties must suffer a loss from the wrong of another, the loss should fall upon the party who put it in the power of that other to perpetrate the wrong." This case does not fall within that rule, for, as we have seen, the possession of the bill of lading, without indorsement or other evidence of assignment, did not vest Evans with any apparent right to the property. The loss resulted from the negligence of defendant in not insisting upon proper evidence of an assignment before it surrendered the goods.

III. It is insisted by appellant that the delivery to Evans was made in accordance with the custom at Pueblo, and that the contract of shipment

3. —: —: must have been made with reference to that
—: custom. custom. The superior court found that by a local custom at Pueblo goods shipped over railway lines to that place were delivered to the person who held the bills of lading, but that the custom was not general, and plaintiff had no knowledge of it. The contract of shipment required defendant to deliver the goods to the

canning company, and we question the right of defendant to vary this by showing a custom in conflict with it. The contract was not ambiguous, and required no explanation. But where a custom may be shown it must appear that it was so general that the parties to the contract will be presumed to have contracted with reference to it. *Couch v. Watson Coal Co.*, 46 Iowa, 20; *Berkshire Woolen Co. v. Procter*, 7 Cush. 422; *Fay v. Insurance Co.*, 16 Gray, 461; *Wilson v. Bauman*, 80 Ill. 494; 2 Greenl. Ev. sec. 251. The court below not only found that the custom pleaded was local, but that plaintiff had no knowledge of it. How the knowledge of plaintiff would affect the contract does not appear, but knowledge on the part of the canning company when the shipping receipt was taken is not pleaded nor is it shown. Therefore this defense is not maintained. *Walls v. Bailey*, 49 N. Y. 473; *Higgins v. Moore*, 34 N. Y. 425; *North Penn. Ry. Co. v. Commercial Bank*, 123 U. S. 727, 8 Sup. Ct. Rep. 266; Clarke's Browne, Usages & Cust. 134, note 4. The further examination which we have given this cause on rehearing leads us to conclude that the first decision of this court was erroneous. The judgment of the superior court is

AFFIRMED.