CLEGG v. RAILROAD CO.

(Filed April 19, 1904).

CARRIERS—*Damages—Carriers of Goods.*

> Where a carrier wrongfully refuses to deliver freight because the owner declines to pay an alleged overcharge in freight, such carrier cannot avoid payment of damages for injury to the freight by showing that the owner did not have the bill of lading at the time he demanded the goods.

WALKER and CONNOR, JJ., dissenting.

ACTION by Z. V. Clegg against the Southern Railway Company, heard by *Judge O. H. Allen* and a jury, at September Term, 1903, of the Superior Court of GUILFORD County. From a judgment for the plaintiff, the defendant appealed.

*C. M. Stedman* and *Brooks & Thompson,* for the plaintiff.
*King & Kimball,* for the defendant.

MONTGOMERY, J. The defendant company received at Greensboro, on Sunday afternoon, the 15th of November, 1901, a car-load of bananas from Baltimore consigned to the Greensboro National Bank, "To order. Notify Z. V. Clegg." Clegg was notified by the bank of the arrival of the goods, and on the 16th, 17th and 18th of November demanded of the freight agent of the defendant at Greensboro the delivery to him of the same. A dispute over the amount of the carriage due upon the shipment having arisen the fruit was not delivered, and before the plaintiff got possession of it it was greatly injured by a spell of freezing weather, by which a loss was inflicted on the plaintiff. The defendant deducted from the freight charges the excess as contended

for by the plaintiff, the same being erroneous.   The amount
demanded by defendant as dues for carriage was $148.
The amount offered by the plaintiff was $106, which amount
was afterwards found to be the amount due.   The defendant
introduced no evidence.   The plaintiff had not received from
the bank a transfer of the bill of lading at the several times
when he made the demands for the delivery of the fruit and
did not receive it until the 18th of the month.   If the defend-
ant had refused to deliver the goods because the plain-
tiff had not received from the bank the assignment or transfer
of the bill of lading, or partly for that reason, the defendant's
contention, to-wit, that the plaintiff had no right to make
the demand for the goods until he presented the bill of
lading would rest on a solid foundation.   But it is clear, from
the evidence of the plaintiff, that the defendant made no point
over the bill of lading not having been presented by the plain-
tiff, but rested its refusal on the ground that the plaintiff
refused to pay the carriage due.   The plaintiff testified that
nothing was said to him by the freight agent as to his right
to receive the bananas, and that nothing was said about that
matter until after they had corrected the freight charges,
when he was told that he would have to get an order from the
bank.   The defendant having at the times of the several
demands assigned no other reason for refusing to deliver the
goods than the refusal of the plaintiff to pay an excessive
charge for carriage, ought not to be allowed to defeat the
plaintiff's right to recover the amount of his loss on the
ground that he did not present the bill of lading or any other
order from the bank, an objection not under consideration,
and not thought of.   *Railroad v. McGuire,* 79 Ala., 395.   He
was treated by the company as if he was the consignee; and
in this connection it is significant that the plaintiff in his
testimony said he had gotten the figures on the freight from
the agent of the defendant in Greensboro before he bought

the fruit. So far as it appears from the evidence, the defendant would not have delivered the goods even if the plaintiff had presented the order from the bank. The defendant's purpose was to collect the bill for the freight, and not so much to see that the plaintiff paid the consignor for the bananas. It was contended for the defendant that the plaintiff should have paid the excess of carriage, received his goods and then sued the defendant for that excess. That was one of his remedies, but he was not compelled to take that course. He might not have had the money with which to pay the excess of carriage; but, if he had, the defendant by its wrongful course could not compel the plaintiff to pay a greater amount than was due. Such a demand would place the law-abiding at the mercy of its violators. The plaintiff recovered from the defendant the difference between the amount of sales of the injured fruit as made by the plaintiff and its value when it was received at Greensboro.

Affirmed.

WALKER, J., dissenting. My understanding of the facts and the law of this case differs so essentially from the views expressed in the opinion of the Court, that I am constrained to differ with the majority of the Judges, not only in their reasoning, but in their conclusion. In its opinion the Court says: "The plaintiff had not received from the bank a transfer of the bill of lading at the several times when he made the demands for the delivery of the fruit and did not receive it until the 18th of the month." The Court then proceeds to say that if the defendant had refused to deliver the fruit because the plaintiff had not received the assignment or transfer of the bill of lading from the bank, or partly for that reason, the defendant's contention that the plaintiff had no right to make the demand for the fruit until he presented the bill of lading would rest on a solid foundation. It seems

to me that the Court's deduction from the evidence that the defendant made no point about the bill of lading, but refused to deliver the goods solely upon the ground that the plaintiff would not pay the freight charges, is not a correct one. The plaintiff demanded the goods at the freight office at a time when he had no title to them and when consequently he had no shadow of right to make the demand. There is no evidence fit to be submitted to a jury that the plaintiff at the time he demanded the delivery of the goods, on Monday the 15th of November, 1902, had paid the draft or account held by the bank and to which the bill of lading was attached, and certainly no evidence that he had received the bill of lading or that the same had been assigned or endorsed to him (which I will presently show was necessary to vest him with the title) until Thursday the 18th of November. The evidence is all the other way; plaintiff was the only witness examined in regard to this matter, and he was not able to say how much money he had in the bank and did not venture to testify that he had enough to pay the draft. He telephoned the bank that he would accept the fruit, but there is no proof reasonably sufficient to show that the bank actually charged the amount of the draft or account accompanying the bill of lading, and which it held for collection, to his account, or that it agreed to do so, and to extend credit to him for the difference between the amount of the draft and the amount, if any, already to his credit in the bank. There is affirmative evidence that he never paid the draft and got the bill of lading until the 18th, the day the goods were delivered to him, after they had been damaged by the freeze, for on the bill and draft was this endorsement, "Paid, November 18, 1901." The plaintiff admits, as the Court states in its opinion, that he did not actually get the possession of the papers from the bank until the 18th. The fact therefore is established by the plaintiff's own evidence that

CLEGG *v.* RAILROAD CO.

when he made the demand on the 15th and 16th of November he did not have the bill of lading to produce. How has the defendant waived the production of the same? Is the mere fact that the plaintiff and the defendant's freight agent had a parley about the amount of the freight charges, during which nothing was said about the bill of lading, to be construed as a waiver? Surely not. The agent had the right to presume that the plaintiff had the bill of lading ready for delivery to him whenever they adjusted the difference in regard to the freight charges. He did not have the right to make the demand unless he had the bill of lading and was the rightful owner of the property, and was the agent therefore to suppose that he did not have the bill? The plaintiff knew whether he had the bill or not and, if he chose to make a demand when he did not own the property, and had not provided himself with the bill of lading duly endorsed or assigned, it was his own folly and his own fault, and is the defendant to suffer because its agent reasonably relied upon the plaintiff's implied representation that he had the right to make the demand? This would be a complete reversal of all legal presumption. The agent had the right up to the very last moment before he actually delivered the goods, or before they passed out of his possession or control, to demand the bill of lading. Even if there can be any such a thing as a waiver, upon the facts of this case was not the plaintiff clearly negligent in not informing the agent as to the true situation? He knew that he did not have the papers and had not paid the draft; the agent did not know this fact, and he had the right to think that no person would demand the goods who did not have the right to do so, and in this state of the case it was his right and his duty to hold the goods for the true owner, and to demand the bill of lading when he acquired knowledge of the facts.

But how can a waiver, in a case like this one, confer title

upon him who had no title? The doctrine of waiver is based upon the idea of estoppel. The general rule is that there can be no binding waiver of a right when there is no estoppel and no valuable consideration received. 28 Am. & Eng. Ency. (1 Ed.), 531; *Wool v. Edenton,* 117 N. C., 6. "To make out a case of abandonment or waiver of a legal right, there must be a clear, unequivocal and decisive act of the party amounting to an estoppel on his part." *Ross v. Swan,* 7 Lea (Tenn.), 467; *Diebl v. Ins. Co.,* 58 Pa. St., 452, 98 Am. Dec., 302. How can the plaintiff rely upon an estoppel when all the facts were known to him and none of them to the agent, and when the duty rested upon him to disclose those facts? Does any one suppose that the defendant's agent would have even discussed the question of freight charges with the plaintiff if he had known that plaintiff had not paid the draft and did not have the bill of lading? Waiver cannot be predicated of the agent's conduct towards the plaintiff, who at the time had no right, so as by its mere operation to give the latter a title which he did not previously have. Such a thing would be an anomaly in the law. Who was entitled to the goods on the morning of the 18th before the plaintiff got the bill of lading? The bank of course. If the bank had demanded the goods of the defendant could the latter have refused delivery? It could not, we must admit, and yet, if by the waiver the title passed to the plaintiff it would follow that he was entitled to the property, and the bank could not recover that which was its own and the title to which it had not in the least parted with. Can it be replied that the defendant would be compelled to deliver to the bank and be liable to the plaintiff for a conversion of the goods? Could there be such a double liability, and this, too, when the defendant acted upon the natural and legal presumption that the plaintiff had the bill of lading when he first made his demand, as he ought to have

had it, and when the plaintiff knew at the time that he did not have it and consequently that he was not entitled to demand the delivery of the goods? How can there be any element of an estoppel when the party relying on the estoppel has knowledge of a material fact which he does not communicate to the other party and of which the latter is ignorant?

Mere silence on the part of the defendant's agent did not amount to a waiver, because a waiver is to be implied from a party's silence when he is under no obligation to say anything. *Railroad v. Rust,* 19 Fed. Rep., 245. What obligation did the defendant owe to the plaintiff to demand the bill of lading? He had absolutely no title and no right to the goods, and beside, if the demand had been made, the plaintiff did not have the ability to comply with it, and this is certainly necessary to be shown in order to constitute in his favor a valid waiver. Why do a vain thing? The plaintiff must have shown that all the time from his first demand for the goods he had the bill of lading ready to be delivered to the defendant upon its request for it. It seems to be an incongruity in the use of legal terms to say that a person can waive a right which he has, so that it can be availed of by a person who at the time has no right at all, when there is no fraud.

There is another objection to the claim of waiver set up by the plaintiff. The facts now alleged as constituting a waiver were not pleaded (*Mfg. Co. v. Ins. Co.,* 110 N. C., 176, 28 Am. St. Rep., 673, 20 A. & E. Ency., 536) nor submitted to the jury, but the case was tried upon the theory alone that the plaintiff had actually paid the draft and received the bill of lading from the bank before the 18th. If there was no evidence to support this theory the plaintiff must fail in the suit, especially as the defendant moved to nonsuit. Where a party alleges performance of a condition precedent to the exercise of his right, evidence of waiver of the condition is

not admissible in support of such averment, because the two
are inconsistent.   He must amend his pleading or in some
proper way put himself in a position to rely upon the waiver.
*Manufacturing Co. v. Ins. Co., supra; Baldwin v. Munn,* 2
Wend., 399.   "Waiver is usually a question of intent, and
knowledge of the right and an intent to waive it must be made
to appear plainly, and this is to be determined usually from
the declaration and conduct of the parties."   28 Am. & Eng.
Ency. (1 Ed.), 528.   It is a mixed question of law and
fact, each case necessarily depending much upon its own
peculiar circumstances and surroundings.   It is a question
of intention and a fact to be determined by the triers of
fact.   *O'Key v. Ins. Co.,* 29 Mo. App., 111.

Passing to the question as to the legal duty of a carrier
with respect to the delivery of goods, we find it to be well
settled that an obligation to deliver to the party having title
under the bill of lading is imposed by law on the carrier and
is absolute and imperative, and a delivery to any other person
is a conversion.   *Railroad v. Barkhouse,* 100 Ala., 543.   The
duty of a common carrier is not only to carry safely, but to
make a true delivery to the person to whom the goods are
consigned (*Houston v. Adams* (Tex.), 30 Am. Rep., 119),
and a delivery to any other is made at the peril of the carrier,
unless that person surrenders the bill of lading either made
or endorsed to himself.   *Gates v. Railroad,* 42 Neb., 379;
*Weyand v. Railway Co.,* 75 Iowa, 573, 1 L. R. A., 650, 9
Am. St. Rep., 504; *M. T. D. Co. v. Merriam,* 111 Ind., 5;
*Bank v. Railway Co.,* 160 Ill., 401.   One reason for this rule
is that the bill of lading is the symbol of ownership of the
property, and though not negotiable, in the ordinary sense, is
assignable.   *Gates v. Railroad, supra.*   The carrier can
require the production or an inspection of the bill of lading
at any time before delivery.   Porter on Bills of Lading, sec-
tion 379.   The same right belongs to his agent for his own

security and protection, and he may exact production of the bill before he gives up the property. Until the carrier can deliver to the shipper, or some one showing authority from him (the bill of lading duly· endorsed and delivered being evidence of that authority), it is his duty to retain the goods, and if they are delivered to one not legally entitled the carrier will be liable to the true owner for their value. He has no right under any circumstances to deliver them to a stranger. *The Thames,* 14 Wall., 98. The carrier is bound not to deliver to any one who has not the bill or symbol of ownership. Portner B. of L., section 414. The pledgee of the bill of lading is not divested of his right or title by any delivery to the consignee, though that delivery was obtained upon presentation by the latter of a duplicate bill or invoice, which the carrier treats as sufficient authority in him to receive the goods. Section 530. "The carrier takes the risk of a delivery to the person entitled to the goods by the bill of lading and its endorsement. * * * ·Too great caution cannot therefore be exercised in respect to the right of the person to whom the delivery is made. No obligation of the carrier is more rigorously enforced than that which requires delivery to the proper person, and the law will allow in fact of no excuse for a wrong delivery except the fault of the shipper himself." Hutchison on Carriers (2 Ed.), sections 130, 340 and 344 *et seq*.

It was therefore the duty of the defendant to hold the goods until the rightful owner or the holder of the bill of lading had made demand upon it for them, and the failure to do so subjects it to liability to such owner or holder for any loss or damage sustained by reason of its default. *Bass v. Glover,* 63 Ga., 745; *Bank v. Colgate,* 4 Daly, 41; *Bank v. Stewart,* 19 N. B. (P. & B.), 268; *Bank v. Hazeltine,* 78 N. Y., 104, 34 Am. Rep., 518; *Dwyer v. Ry. Co.,* 69 Tex., 707; *Express Co. v. Dickson,* 94 U. S., 549. If this be law,

CLEGG v. RAILROAD CO.

and it unquestionably is the law, the effect of the decision in this case will be to hold that a carrier will be liable to one in damages if the latter makes a demand for the delivery to him of goods in the carrier's cars or warehouse, when the party making the demand has no claim or title to the goods, and no right therefore to make it, provided the amount of freight charges is tendered and the carrier refuses to deliver the goods, but does not at the time call for the production of the bill of lading properly endorsed to the consignee. In my opinion this is an innovation in the law of carriers, and contravenes the well-settled rule that one who acquires title to property after it has been damaged does not acquire also the cause of action for the damage, unless it is expressly assigned to him. *Drake v. Howell,* 133 N. C., 162; *Liverman v. Railroad Co.,* 114 N. C., 692.

The defendant is liable to the bank, if to anybody, for any damage to the goods while in the care of the defendant, up to Thursday the 18th. The right to recover upon this liability has never been transferred to the plaintiff, nor did it become his, as we have seen, by virtue of his subsequently acquired ownership of the goods. As said by the Court in *Young v. Railway Co.,* 80 Ala., 100, a case very much in point, "the defendant's duty not to deal tortiously with the property of an innocent third person (a bank holding a draft with a bill of lading attached) cannot be affected by the failure of the depot agent first to tender back to the plaintiff (assignee or consignee) the amount of freight collected on the goods. The law will not compel the defendant carrier to commit a tort by delivering goods to the plaintiff because the agent agreed to do so in consideration of the payment of freight," unless he is the holder of the bill of lading No one shall be rebuked by the law for doing that which he is enjoined by the law to do, much less will he be made to suffer for his correct conduct. The defendant agent

CLEGG *v.* RAILROAD CO.

had the right to rely and act upon the principle, knowledge of which the plaintiff should have had, that according to the usual and ordinary course of business recognized by the law, the goods could not be obtained by him except upon the production of the bill of lading, and his conduct therefore was not in law or in fact calculated to mislead the plaintiff and thus to create an estoppel upon the company, from which a waiver of the right to call for the bill of lading would be presumed or even inferred. *Forbes v. Railroad,* 133 Mass., 157.

The motion to nonsuit, in my opinion, should have been granted, as the plaintiff showed no just or legal claim to the damages he seeks to recover, and there should at least be a new trial, in any view of the case, as the Court charged the jury upon a theory which was not supported by any proof, and the question of waiver upon which the case is now decided, if there is any evidence of it, was not submitted to the jury.

As the plaintiff is allowed to recover upon a cause of action which I do not think he owns, the defendant is practically in danger of being twice vexed for one and the same cause, or of being compelled to assume a double liability, which surely would be unjust, and the rule of law which produces such a result should be very clearly established. Indeed, if the law is to remain as in this case declared, it will be difficult for common carriers to conduct their business with any degree of safety. If the defendant is liable for any negligence to the bank, which at the time of the injury to the bananas was the true owner, as the holder of the draft and bill of lading, let the recovery be confined to the true right and title and not go to one who has no right at all.

CONNOR, J., concurs in the dissenting opinion.