W. N. JEANS v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 10 December, 1913.)

1. **Carriers of Goods—Refusal to Deliver—Valid Excuse—Burden of Proof.**

   Where a consignee brings his action to recover the value of a shipment of goods from the carrier, shows that the shipment was addressed to him, was prepaid, in the carrier's possession at destination, and a demand for delivery, the burden is on the carrier to show a valid reason for its refusal to deliver the shipment.

2. **Carriers of Goods—Contracts of Shipment—Parol Contracts.**

   A parol contract of shipment made with a common carrier is valid in law.

3. **Carriers of Goods—Refusal to Deliver—Demand of Bill of Lading —Valid Excuse—Burden of Proof.**

   The failure or refusal of a consignee to produce, upon the carrier's demand, a bill of lading for a prepaid shipment of goods in the carrier's possession is ordinarily a valid defense to an action to recover of the carrier the value of a shipment, which has never been delivered, but the burden is upon the carrier to prove that such demand has been made and not complied with.

4. **Same—Fraudulent Transfer—Presumptions.**

   Where a prepaid shipment of goods is in the carrier's possession at its destination, addressed to the consignee, and he demands delivery thereof to him, he is entitled to the goods, nothing else appearing; for while the bill of lading is assignable, it will not be presumed that in a given instance it has been as-

signed, without evidence thereof, and the burden is upon the carrier to prove the consignee's fraudulent intent in making his demand without producing his bill of lading when such is relied on by it as a reason for refusing delivery.

5. **Carriers of Goods—Interstate Commerce—Federal Questions— Practice—Penalties.**

In an action to recover the penalty for the refusal of the carrier to deliver an interstate shipment of goods, the exception that such recovery would impose a burden upon interstate commerce must be taken upon the trial and in the appellant's brief in order for the Federal question to be made available; but it is *Held*, that a penalty recoverable for the refusal of delivery and the failure to settle a claim based thereon after the arrival here of the shipment and while in the carrier's possession, does not raise a Federal question. Revisal, secs. 2633, 2634.

6. **Carriers of Goods—Penalty Statutes—Actions.**

A recovery of the value of a shipment of goods and the penalties for the refusal of the carrier to deliver (Revisal, sec. 2634) and for the failure to settle the claim within the statutory period, may be united in the same action.

ALLEN, J., concurring; BROWN, J., dissenting in part; WALKER, J., concurring in the dissenting opinion.

APPEAL by defendant from *Bragaw, J.,* at March Term, 1913, of ANSON.

*Gulledge & Boggan for plaintiff.*
*W. E. Brock and Murray Allen for defendant.*

CLARK, C. J. This is an action begun before a justice of the peace to recover for the loss of a shipment of goods (molasses) of the value of $18.75, and the penalty of $50, under Revisal, 2633, for failure and refusal of the defendant to deliver said goods upon demand of plaintiff while they were lying in their station after arrival at Wadesboro, N. C., and also for the penalty of $50 under Revisal, 2634, for the failure of the defendant to settle and pay for the loss of said goods the value of $18.75 within four months from the time the claim was filed with the defendant.

By agreement, the issue as to the value of the goods was answered $18.75.

The plaintiff's evidence is that in March, 1912, he went to the Seaboard station, saw his goods lying in the station, and requested delivery; that the agent did not demand a bill of lading of him, but said he could not deliver because his waybill had not been received; that in fact he did not get a bill of lading till it was mailed to him from Charlotte, 30 December, 1912. He offered to pay freight, but the defendant admits that the molasses came freight prepaid. It was also in evidence that the plaintiff filed his bill for the loss of the goods, $18.75, on 15 October, 1912, and this bill had not been paid yet. The goods were not delivered to plaintiff, but were sold by the defendant.

The sole controversy seems to arise upon the evidence of the defendant's agent, who in contradiction to the plaintiff testified that he demanded the bill of lading of the plaintiff. He testified that the molasses came on a "stray shipment," and that he himself had received no waybill, and that they had no evidence whence the shipment came, as the bill was sent out from Charlotte. It was afterwards ascertained that the goods in fact were shipped from New Orleans, and were received by the defendant at Charlotte and transported over its line to Wadesboro.

The defendant excepted because the court charged the jury: "If you find that these goods were in the possession of the defendant, and were the same goods that the plaintiff purchased, that is, if you answer the second issue 'Yes,' then the burden is on the defendant on this third issue to satisfy you that it demanded of Mr. Jeans that he produce the bill of lading, and that it was because of his failure to produce the bill of lading that they failed and refused to deliver the shipment of goods." The jury by their answer found that the defendant did not demand the bill of lading, and that its nonproduction was not the cause of its failure and refusal to deliver the molasses. The plaintiff testified that the reason given by the agent was that the defendant itself had not received its waybill.

It is not clear that any bill of lading was issued, for the defendant testified that he received none till one was sent him from Charlotte, 30 December following. There being no "waybill," the goods were rebilled from Charlotte to Wadesboro.

As the goods were lying in the station at Wadesboro, and it is not contradicted that they were the property of the plaintiff, and the defendant's testimony is that the freight was prepaid, the burden, as the judge correctly charged, was upon the defendant to show good cause for a refusal to deliver. Whether the failure to produce the bill of lading on demand was such good cause or not, does not arise, as the jury found that it was not demanded and was not the reason for the failure to deliver. A shipment without bill of lading and by parol is valid at common law.

In *Dunie v. R. R.,* 161 N. C., 522, *Brown, J.,* says: "The burden of proof of delivery of the goods, the receipt thereof being admitted, is cast by law on the defendant. And upon failure to satisfy the jury by the preponderance of evidence that the case of goods was delivered, the defendant is liable for its value." It follows, therefore, that the goods being in the possession of the defendant, and it being admitted that the plaintiff made demand for delivery and they were not delivered, the burden must be on the defendant to show cause for its refusal.

There is no presumption that the bill of lading had been assigned by the plaintiff. The goods directed to him were lying on the floor of the warehouse, marked in his name. It is admitted that the freight was prepaid. When, therefore, he demanded possession of the goods, nothing else appearing, he was entitled to them. If there is any reason why they should not have been delivered, the burden was upon the defendant, as warehouseman, to show it. The defendant had a right to require a bill of lading, and if it did, and the plaintiff had refused to produce same, this would have been an excuse, unless the plaintiff had shown, as he could, that he had not received any bill of lading, and, therefore, had not assigned it. There is no presumption that the plaintiff had assigned the bill of lading and was endeavoring to get possession of the goods by false pretenses, a penitentiary offense. While the defendant had a right to demand the bill of lading, or proof of its nonreceipt, the burden was upon the defendant, as the judge properly charged, to show that fact in excuse of his failure to deliver

goods addressed to the plaintiff, on which all charges had been prepaid. Any other ruling would reverse the rule, that the plaintiff having made out a *prima facie* case by demanding goods addressed to him, matters in excuse must be shown by the bailee. It would be very inconvenient in practice if farmers and other consignees in the country sending their wagons, often many miles, to the railroad station for fertilizers and meat or other articles should have the wagons sent back without any excuse, when if the bill of lading had been demanded, it would be produced. A bailée who refuses to deliver goods belonging to the bailor, *prima facie* by virtue of its receipt addressed to him, must show matters in excuse.

It is not suggested in defendant's brief here, nor by any exception taken on the trial below nor in this Court, that the failure to deliver, after the receipt of the goods in the warehouse at Wadesboro, raises a Federal question. Such question cannot be raised in any other way. But as the point is suggested, it is only necessary to say that it has been often passed on in this Court.

In *Harrill v. R. R.*, 144 N. C., 537, *Walker, J.,* says: "A railroad company owes it as a common-law duty to deliver freight upon the payment of charges by the consignee (here they were prepaid), and in the absence of a conflicting regulation by Congress, Revisal, 2633, imposing a penalty upon default of the railroad company therein, is constitutional and valid, and is an aid to, rather than a burden upon, interstate commerce," citing United States decisions.

In *Morris v. Express Co.*, 146 N. C., 167, *Hoke, J.,* held that the failure to deliver freight after its arrival at the destination in this State and after being placed in defendant's warehouse is not interstate commerce, citing *R. R. v. Solan,* 169 U. S., 137, and many other United States decisions.

In *Hockfield v. R. R.*, 150 N. C., 422, it is held by a unanimous Court: "The penalty imposed by the Revisal, 2633, has nothing to do with interstate transportation, but deals only with the neglect of duty of the defendant after the transportation was fully completed and the goods lay in its warehouse—not in

the cars—at Durham.  The plaintiff demanded his goods again and again (as in this case), but the defendant would not make out its freight charges nor deliver the goods.  The penalty laid by the Revisal, 2633, has been held not a burden on interstate commerce (*Harrill v. R. R.,* 144 N. C.; 532); and, indeed, the failure to deliver freight is not interstate commerce.  *Morris v. Express Co.,* 146 N. C., 171."

There is no exception as to the penalty of $50 for failure to settle the claim within four months after filing, as authorized by Revisal, 2634.  But if it had been, this has been held not a violation of interstate commerce, in *Iron Works v. R. R.,* 148 N. C., 470, citing *Efland v. R. R.,* 146 N. C., 135; *Morris v. Express Co., ib.,* 167; *Harrill v. R. R.,* 144 N. C., 540; *Cottrell v. R. R.,* 141 N. C., 383, in all which that point has been thoroughly discussed.

It may be noted that Revisal, 2634, has been somewhat changed and amended by Laws 1911, ch. 139, in which it expressly provided (though it was not necessary to do so, *Robertson v. R. R.,* 148 N. C., 323) that "causes of action for the recovery of the possession of the property shipped, for loss or damage thereto, and the penalties herein provided for, may be united in the same complaint."

No error.

ALLEN, J., concurring: No question is raised upon the record as to the rights of a shipper under a parol contract of shipment, as it appears that the plaintiff introduced a bill of lading as evidence of his title to the goods.  Nor is the right involved of the carrier to require the production of the bill of lading, when one has been issued, in order that the correct freight charges may be ascertained, because it is alleged in the complaint and admitted in the answer that the freight charges were prepaid.  Nor is any Federal question raised, as the defendant has not invoked the protection of the commerce clause of the Constitution.  Nor has any exception been taken to any issue submitted to the jury.

It does appear, however, that the defendant excepted to the refusal of his Honor to substitute for the third issue the follow-

ing: "Did the plaintiff make a proper demand on the agent of the defendant for the delivery of said syrup?" and to his charge on the third issue as to the burden of proof, and these exceptions present the questions in controversy.

I agree to the proposition that when a bill of lading is issued, it is evidence of the shipper's title to the goods, and it is to the interest of the carrier and the shipper that it should be presented before the delivery of the goods, because, as it is assignable, it is only in this way that the carrier can be protected against a delivery to the wrong person, and that the shipper may be sure to get his goods. It is, therefore, I think, under the authorities, the right of the carrier to require the presentation of the bill of lading when the goods are demanded; but this right may be waived.

I therefore think that, ordinarily, the issue tendered is the proper one, but in this case it is admitted that the goods were shipped, that the freight was prepaid, and that they were in possession of the defendant marked as the property of the plaintiff, and the issue submitted to the jury presented the only excuse relied on in the answer for nondelivery, that the agent of the defendant demanded the bill of lading and it was refused.

The issue follows very closely the language of the answer, and under it both parties had ample opportunity to present their contentions.

His Honor charged the jury on the second and third issues as follows: "The second issue, 'Was said shipment of goods received by defendant railroad at Wadesboro, as alleged?' You have heard the evidence on that issue. The only question for you to determine is whether or not the goods admitted by the defendant to have been in its warehouse at Wadesboro, marked to the plaintiff and sold by it, was the same shipment for which the plaintiff contends. If you are satisfied that it was, then you should answer the second issue 'Yes'; otherwise, answer it 'No.' The third issue is, 'Did the defendant, the railroad company, demand the production of the bill of lading for said goods by the plaintiff as a condition precedent to delivery, as alleged by the defendant?' If you find that these goods in the posses-

sion of the defendant were the same goods which the plaintiff purchased, that is, if you answer the second issue 'Yes,' then the burden is on the defendant on this third issue to satisfy you that it demanded of Mr. Jeans that he produce the bill of lading, and that it was because of his failure to produce the bill of lading that they failed and refused to deliver the shipment of goods," and the defendant excepted to the last paragraph.

The charge is based on an admission or a finding of the jury that the goods were shipped to the plaintiff; that the freight charges were prepaid; that they were in possession of the defendant, marked to the plaintiff, and that delivery had been refused upon demand; and, so understood, was not, I think, erroneous.

These facts, if proven, would establish *prima facie* ownership in the plaintiff and entitle him to a delivery of the goods, and the burden would then be on the defendant to justify non-delivery.

BROWN, J., dissenting in part: This action is brought to recover $18.75, the value of a shipment of syrup made to the plaintiff over the defendant's railway, and for $50 penalty under section 2634 for delay in settling the claim, and also for an additional penalty of $50 under Revisal, sec. 2633, for refusal of defendant's agent to deliver the goods upon plaintiff's demand.

I am of opinion that the plaintiff is not entitled to recover the additional penalty last named.

The plaintiff's evidence tends to prove that in March, 1912, Penick & Foard shipped to him by the defendant's railway six crates of syrup. The plaintiff received the bill of lading for the syrup for the shipment, which he introduced in evidence. The plaintiff testifies that he does not remember when he received the bill of lading, but the evidence shows he never presented it to the defendant's agent.

The goods were received by the defendant at Wadesboro, and when the plaintiff called for them, they were in the defendant's warehouse. The plaintiff did not have a bill of lading for the goods then, and did not present it.

Plaintiff offered to pay any freight charges, but defendant's agent stated he had no waybill for the goods, and could not tell what the charges were. There is no evidence that the plaintiff ever presented a bill of lading to defendant's agent for the goods, accompanied by a demand for the same.

There is evidence that the defendant's agent demanded the bill of lading before delivering the goods. The goods were sold by the defendant some time afterwards for the freight money.

I agree with the majority of the Court that the plaintiff is entitled to recover the value of the goods and the $50 penalty for failure to settle the claim within the statutory period. But I do not think the plaintiff is entitled to recover the additional penalty for failure to deliver the goods, under Revisal, sec. 2633. That section reads as follows:

*"Paid at classified rates; penalty for overcharge.* All common carriers doing business in this State shall settle their freight charges according to the rate stipulated in the bill of lading, provided the rate therein stipulated be in conformity with the classification and rates made and filed with the Interstate Commerce Commission in case of shipments from without the State, and with those of the Corporation Commission of the State in case of shipments wholly within this State, by which classifications and rates all consignees shall in all cases be entitled to settle freight charges with such carriers; and it shall be the duty of such common carriers to inform any consignee or consignees of the correct amount due for freight according to such classification and rates, and upon payment or tender of the amount due on any shipment which has arrived at its destination according to such classification and rates such common carrier shall deliver the freight in question to consignee or consignees, and any failure or refusal to comply with the provisions hereof shall subject such carrier, so failing or refusing, to a penalty of $50 for each such failure or refusal, to be recovered by any consignee or consignees aggrieved by any suit in any court of competent jurisdiction."

To my mind, the statute does not warrant the recovery of the penalty upon the facts of this case in any view of them. The

statute does not purport to cover all cases of refusal to deliver freight. If it is so construed, a great hardship would be worked on the carrier, because its good faith in refusing to deliver freight upon any other ground than failure to pay freight charges would be no defense.

The statute makes no exception, because in its entirety it constitutes an exception. Generally, the carrier is liable in damages for refusal to deliver freight unless such refusal can be justified, but in the *specific case* of refusal of delivery because the consignee refuses to pay more than the amount due for freight according to the published classification and rates, the law imposes a penalty of $50.

By its very terms the section applies only when the carrier refuses to deliver the goods and settle the freight "according to the bill of lading." And manifestly it is intended to cover only those cases in which the refusal to deliver is because of a dispute about freight rates, and then the bill of lading must control.

This statute has been construed in· *Harrill v. R. R.,* 144 N. C., 533. In that case the consignees offered to pay freight charges according to the bill of lading produced by them. The agent refused to deliver because he had received no waybill accompanying the shipment.

Referring to this section, the Court says: "It does not provide that the penalty for a refusal to deliver freight shall be recoverable only where rates have been made and filed with the Interstate Commerce Commission . . . but the meaning of the section is that upon a tender of the stipulated charges, *as stated in the bill of lading,* which shall not exceed the amount fixed in the classification and table of rates published and filed with the Commission, and upon refusal to deliver the freight, the penalty shall accrue."

The opinion goes on to declare that in the absence of such classification the settlement of freight must be made according to the terms of the bill of lading, and says:

"The legislation embodied in section 2633 was intended to recognize and enforce the observance of the rates as fixed under

· the requirement of the Federal law where it is applicable. The provision was made for the protection of the consignee, so that the carrier cannot exact from him, as a condition of the delivery of freight, the payment of excessive freight charges."

*Mr. Justice Walker,* speaking for the Court, further says: "If the defendant did not know what the charges were as fixed by the bill of lading, because it did not have the waybill, it should have known, and it was not the fault of the plaintiffs that the waybill did not accompany the goods, and was not received with them, or in the usual course of business."

In the case at bar there was neither waybill nor bill of lading, and nothing indicating what the proper charges were. The bill of lading is always given to the shipper, and he mails it in the course of business to the consignee.

In this case it had not been received, and has never been presented to the defendant, accompanied with a demand for the goods. The agent of defendant was not required to deliver the goods without prepayment of the freight charges, and he could not lawfully fix those in the absence of the bill of lading.

The *Harrill case, supra,* is an example of the proper application of the statute. There the consignees produced the bill of lading, offered to pay freight charges, and demanded the delivery of the goods. The agent refused for the reason that he did not know what the freight charges were, having received no waybill.

Section 2633 expressly provides that refusal to deliver subjects the carrier to the penalty when the freight charges are tendered. But the statute does not say that when delivery is refused upon any other ground that the penalty will be imposed. The hardship of such a view can be illustrated:

If the carrier delivers freight to one who does not present the bill of lading, it does so at its peril. If it is the wrong person, the carrier is liable in damages. If the carrier refuses to deliver freight when the proper charges are tendered, a penalty of $50 is imposed. If the proper charges are tendered by one who does not present the bill of lading, the carrier must either deliver at its peril or incur the penalty.

The defendant excepted to each issue submitted, and tendered other issues. The third issue submitted is as follows: "Did the defendant demand the production of the bill of lading for said goods as a condition precedent to delivering?"

This issue was erroneously submitted under a wrong conception of the legal relations of the parties. Our statute, Revisal, sec. 1111, in unmistakable language, puts the burden upon the consignee to produce and present his bill of lading before the carrier is required to deliver the goods. It reads as follows:

*"Duplicate freight receipts; charges stated; freight delivered on payment of charges.* All railroad companies shall on demand issue duplicate freight receipts to shippers, in which shall be stated the class or classes of freight shipped, the freight charges over the road giving the receipt, and, so far as practicable, shall state the freight charges over the roads that carry such freight.

*"When the consignee presents* the railroad receipt to the agent of the railroad that delivers such freight, such agent shall deliver the articles shipped, upon payment of the rate charged for the class of freight mentioned in the receipt."

The bill of lading is the evidence of the title to the goods, and an indorsement of it by the shipper, if made out to his order, or by the consignee, if made out to him, confers a good title upon the indorsee.

Therefore, the statute fixes clearly the condition upon which the carrier is required to deliver freight. It provides that delivery must be made *when the consignee presents the railroad receipt, which is the bill of lading, to the agent.* It is essential that the consignee show that he has complied with the requirements of this statute before he can complain of the carrier's failure to deliver freight.

We have a very exhaustive discussion of the question of the duty of the carriers to deliver only to one who has the bill of lading, by *Mr. Justice Walker* in his dissenting opinion in *Clegg v. R. R.,* 135 N. C., 149. The position taken by the dissenting justices, *Walker* and *Connor,* on this point, was not controverted by the Court in the opinion. The case went off

on the point that the defendant waived the right to require presentation of the bill of lading. I quote from the dissenting opinion:

"Passing to the question as to the legal duty of a carrier with respect to the delivery of goods, we find it to be well settled that an obligation to deliver to the party having title under the bill of lading is imposed by law on the carrier, and is absolute and imperative, and a delivery to any other person is a conversion. *R. R. v. Barkhouse,* 100 Ala., 543.

"The duty of a common carrier is not only to carry safely, but to make a true delivery to the person to whom the goods are consigned (*Houston v. Adams* (Tex.), 30 Am. Rep., 119), and a delivery to any other is made at the peril of the carrier, unless that person surrenders the bill of lading either made or indorsed to himself. *Gates v. R. R.,* 42 Neb., 379; *Weyand v. R. R.;* 75 Iowa, 573; 1 L. R. A., 650; 9 Am. St. Rep.; *M. T. D. Co. v. Merriman,* 111 Ind., 5; *Bank v. R. R.,* 160 Ill., 401.

"One reason for this rule is that the bill of lading is the symbol of ownership of the property, and though not negotiable, in the ordinary sense, is assignable. *Gates v. R. R., supra.*

"The carrier can require the production for an inspection of the bill of lading at any time before delivery. Porter on Bills of Lading, sec. 379. The same right belongs to his agent for his own security and protection, and he may exact production of the bill before he gives up the property. Until the carrier can deliver to the shipper, or some one showing authority from him (the bill of lading duly indorsed and delivered being evidence of that authority), it is his duty to retain the goods, and if they are delivered to one not legally entitled, the carrier will be liable to the true owner for their value.

"He has no right under any circumstances to deliver them to a stranger. *The Thames,* 14 Wall., 98. The carrier is bound not to deliver to any one who has not the bill or symbol of ownership. Portner B. of L., sec. 414.

"The pledgee of the bill of lading is not divested of his right or title by any delivery to the consignee, though that delivery

was obtained upon presentation by the latter of a duplicate bill or invoice, which the carrier treats as sufficient authority in him to receive the goods. Section 530.

" 'The carrier takes the risk of a delivery to the person entitled to the goods by the bill of lading and its indorsement. Too great caution cannot, therefore, be exercised in respect to the right of the person to whom the delivery is made. No obligation of the carrier is more rigorously enforced than that which requires delivery to the proper person, and the law will allow, in fact, of no excuse for a wrong delivery except the fault of the shipper, himself.' Hutchison on Carriers (2d Ed.), secs. 130, 340, and 344, et seq."

To same effect is Bank v. R. R., 153 N. C., 346. Assuming that the agent could have done so, it is not claimed in this case that he did waive the production of the bill of lading, because if he had waived it, he would have delivered the goods; and, therefore, no issue as to waiver was tendered or submitted.

It is only claimed by the plaintiff that the burden was on the agent to demand the production of the bill of lading. In this instance, if the agent had demanded it, the plaintiff could not have produced it, for he did not have it then, and did not get it until long afterwards. There is no evidence that the plaintiff ever at any time presented a bill of lading to the defendant and at same time demanded the goods.

But I think I have shown by the terms of our statute, section 1111, as well as by the authorities, that it was the consignee's duty to present the bill of lading as a condition precedent to demanding the goods. It was as much his duty to do so as it is the duty of a payee in a draft to present it before he can demand the money it calls for.

For these reasons, I am of opinion that section 2633 of the Revisal was intended to apply only in those cases in which the refusal to deliver the goods is due to a dispute about the amount of the freight charges, where the carrier demands more than the consignee is required to pay upon the face of the bill of lading. Certainly, this is the construction placed upon the statute by this Court in the Harrill case.

In our case no freight charges were tendered, and none demanded, for the consignee did not have the bill of lading, and the agent had no waybill, and neither knew then what they were or whether they were prepaid.

The plaintiff in his testimony admits that he did not receive the bill of lading mailed to him from Charlotte on 30 December, 1912, until after the goods were sold.

I admit that this Court has held in several cases cited in the opinion that section 2633 of the Revisal is not obnoxious as an interference with interstate commerce. But those decisions were made before the recent decisions by the Supreme Court of the United States reversing the majority of this Court in *R. R. v. Reid,* 222 U. S., 424; *R. R. v. Reid & Beam,* 222 U. S., 444; *R. R. v. Lumber Co.,* 225 U. S., 99.

Under those decisions it would seem to be very clear that section 2633 is void as a regulation of interstate commerce.

MR. JUSTICE WALKER concurs in this opinion.